Thomas R. HARPER, Plaintiff,

v.

SAN LUIS VALLEY REGIONAL MEDICAL CENTER and Lutheran Hospital Association, Defendants.

Civ. A. No. 93–B–882.

United States District Court, D. Colorado.

April 8, 1994.

James C. Fattor, Fattor & Kittle, P.C., Denver, CO, for plaintiff.

F. James Gallo, Gallo & Godfrey, Denver, CO, for defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Defendants San Luis Valley Regional Medical Center (SLVRMC) and Lutheran Hospital Association (Lutheran) move for summary judgment against plaintiff Thomas R. Harper (Harper). The motion is adequately briefed and oral argument will not materially aid its resolution. Jurisdiction arises under 28 U.S.C. §§ 1331. For all the reasons set forth below, the motion will be granted.

### I.

Harper brings a claim pursuant to 29 U.S.C. § 215(a)(3) of the Fair Labor Standards Act (FLSA) against SLVRMC and Lutheran (collectively hospital) for their failure to hire him for a nursing position in the spring or early summer of 1992. Harper alleges that he was not hired because of his involvement as a plaintiff in a federal wage claim action against the city (the city) and county of Alamosa (collectively Alamosa).

The facts, with disputes resolved in Harper's favor, are as follows. Harper is one of eleven individuals who filed a lawsuit in October, 1991 against Alamosa for unpaid over-time wages. That suit arose out of the city's employment of ambulance personnel in its emergency medical services division. In the spring and early summer of 1992, Harper applied for one of several nursing positions available at SLVRMC. At the time, he was not a hospital employee. Harper was not hired for any of the available positions. Seven or eight individuals in Harper's nursing class were hired notwithstanding Harper's higher class standing, more extensive experience in patient care, mobile intensive care, and teaching experience.

On five separate occasions between May, 1991 and May, 1992, Harper taught classes in advanced cardia life support (ACLS), electrocardiogram interpretation (EKG), and cardio pulmonary resuscitation (CPR) to various hospital staff. These classes were designed to maintain the hospital nursing staffs' certification. The students paid the hospital a fee for the classes. Three of these classes were one-day sessions, the other two lasted two days. Harper was the only hospital instructor hired on a temporary basis. All of the other instructors held full-time permanent positions.

In scheduling the classes, the hospital consulted with Harper to determine his availability. Every effort was made to coordinate these sessions with his schedule. Ultimately, the hospital set the date, times and places for the classes, and supplied the classroom materials. Harper determined the content, methodology, and level of detail of each course. As for compensation, the hospital withheld no taxes, social security allotments or other monies from Harper's compensation. The hospital also provided him with no employee benefits. He was also never included on the hospital's employee roster.

### II.

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Ca-*

*trett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits if any, which it believes demonstrate the absence of genuine issues for trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553; *Mares v. ConAgra Poultry Co., Inc.,* 971 F.2d 492, 494 (10th Cir.1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.,* 622 F.2d 516, 519 (10th Cir.1980); Fed.R.Civ.P. 56(e).

### III.

Harper alleges that the hospital's failure to hire him for the nursing position gives rise to his 29 U.S.C. § 215(a)(3) claim. In relevant part, § 215(a)(3) provides:

(a) ... it shall be unlawful for any person—

...

(3) to discharge or in any other manner discriminate against any *employee* because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter ... (emphasis added).

Congress, in its own inimitable way, defines an "employee" as "... any individual employed by an employer." 29 U.S.C. 203(e)(1). In this section, Congress "sought to foster a climate in which compliance with the substantive provisions of the [FLSA] would be enhanced" by recognizing that "fear of economic retaliation might offer operate to induce aggrieved employees quietly to accept substandard conditions." *Love v. RE/MAX of America, Inc.,* 738 F.2d 383, 387 (10th Cir.1984) (quoting *Mitchell v. Robert DeMario Jewelry, Inc.,* 361 U.S. 288, 292, 80 S.Ct. 332, 335, 4 L.Ed.2d 323 (1960)).

Harper argues that there are genuine issues of material fact which preclude summary judgment in this case. Specifically, he contends that a material factual dispute exists as to whether his application was considered in the same manner as all other applicants, or that the decision not to hire him was unrelated to the exercise of his FLSA rights. For purposes of this summary judgment motion, I will accept as true Harper's allegation that the hospital retaliated against him for exercising his FLSA rights.

■ In light of this assumption, the dispositive question is whether Harper has standing to bring this anti-retaliation claim under § 215(a)(3). The hospital contends that Harper's claim cannot be sustained as a matter of law, because he was never the hospital's "employee". It is undisputed that Harper was not a hospital employee when it refused to hire him in the spring or summer of 1992. In response, Harper contends that § 215(a)(3) extends to retaliation claims brought by non-employee job applicants. I disagree.

To effectuate its broad remedial purposes, courts have adopted an expansive interpretation of the definitions relating to employment status under FLSA. *Dole v. Snell,* 875 F.2d 802, 804 (10th Cir.1989). The issue of standing under § 215(a)(3) has been the subject of few reported cases, *Hayes v. McIntosh,* 604 F.Supp. 10, 16 (N.D.Ind.1984), and the Tenth Circuit has not addressed this issue. Courts in other circuits have extended § 215(a)(3) protection to *former* employees who are subjected to retaliation by former employers. *Id.* at 19; *Bonham v. Copper Cellar Corp,* 476 F.Supp. 98, 103 (E.D.Tenn.1979). However, no court has addressed whether this anti-retaliation statute extends further to protect job applicants who were neither former employees nor employees of the retaliating employer.

■ Keeping in mind FLSA's broad remedial purposes, I am not persuaded that § 215(a)(3) was designed to protect non-employee/non-former employee job applicants. In determining the scope of this statute, I begin with the statutory language itself. *Wilson v. Stocker,* 819 F.2d 943, 948 (10th Cir.1987). Statutory words mean nothing unless they distinguish one situation from another; line-drawing is the business of language. *Contract Courier Services, Inc. v.*

914

*Research and Special Programs Admin. of U.S. Depart. of Transp.*, 924 F.2d 112, 114 (7th Cir.1991). Where a statute names parties who come within its provisions, other unnamed parties are excluded. *Foxgord v. Hischemoeller*, 820 F.2d 1030, 1035, *cert. denied*, 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 502 (9th Cir.1987).

Here, § 215(a)(3) specifically identifies those individuals who come within its provisions i.e. employees. Therefore, other unnamed parties such as non-employee job applicants are excluded from its protection. *Id.* Accordingly, absent any supporting legislative intent or other legal authority, I decline to extend the protection of § 215(a)(3) to individuals who were *never* employed by the retaliating employer.

 Assuming arguendo § 215(a)(3) protects *former* employees from retaliation by a former employer, the question remains whether, as a matter of law, Harper was the hospital's "former employee" when he temporarily taught classes there. Courts are not limited by any contractual terminology used by the parties or by the traditional common law concepts of "employee" or "independent contract." *Dole v. Snell*, 875 F.2d 802, 804 (10th Cir.1989). The economic realities of the relationship govern whether a worker is an "employee" or an "independent contractor" under the FLSA. *Id.* The focal point of the analysis is "whether the individual is economically dependent on the business to which he renders service ... or is, as a matter of economic fact, in business for him." *Id.* (citing *Bartels v. Birmingham*, 332 U.S. 126, 130, 67 S.Ct. 1547, 1550, 91 L.Ed. 1947 (1947)). In applying this test, the following five factors should be considered:

1) the degree of control exerted by the alleged employer over the worker; 2) the worker's opportunity for profit or loss; 3) the worker's investment in the business; 4) the permanence of the working relationship; and 5) the degree of skill required to perform the work.

*Id.* at 805. No one of these factors in isolation is dispositive; rather, the test is based upon the totality of the circumstances. *Id.* Although the existence and degree of each factor may be a question of fact, the legal conclusion to be drawn from those facts—whether workers are employees or independent contractors—is a question of law. *Id.*

Here, the existence and degree of each of the factors is undisputed. Hence, the conclusion to be drawn from the undisputed facts may now be drawn as a matter of law. In applying the relevant factors to the undisputed facts in this case under the totality of the circumstances, I conclude that Harper was an independent contractor rather than an employee when he provided teaching services to the hospital.

Application of the first three factors is inconclusive. The first factor is the degree of control exercised by the hospital over Harper. The hospital specified the courses which it wanted Harper to teach. It also set the date, time and locations for the classes. Harper, on the other hand, determined the content, methodology, and level of detail of each course. As for the second factor, opportunity for profit or loss, Harper exercised some control over this factor because he was compensated separately for each course. Harper retained the right to teach all, some, or none of the courses. Therefore, within certain limits, he could determine the level of his compensation. The third factor, Harper's investment in the business, includes his investment in obtaining the skills and knowledge necessary to teach these specialized courses. The hospital's investment included the classroom materials. It did not train Harper nor did it pay for him to acquire his teaching expertise.

 However, the last two factors, permanence of the working relationship and degree of skill required to perform the work, establish conclusively that Harper was an independent contractor. Employees usually work for only one employer and the relationship is continuous and of indefinite duration. *Id.* at 811. Independent contractors often have fixed employment periods and transfer from place to place as particular work is offered to them. *Id.*

In this case, the five teaching sessions lasted only seven days, and were held sporadically over approximately one year. Harper's services were temporary while the hos-

pital's other instructors held full-time permanent positions. In addition, Harper was never listed on the hospital's employee roster list. Furthermore, neither the hospital nor Harper had any expectation that he would teach the nursing staff on a periodic, repeated, or regular basis. Harper's temporary, limited and sporadic business relationship with the hospital establishes his status as an independent contractor.

Next, the degree of skill required to teach the hospital's nursing staff further confirms Harper's independent contractor status. The teaching of these courses required special skill and knowledge in areas of ACLS, EKG, and CPR. Harper was hired because of his special expertise in these areas.

 Finally, an additional commonly considered factor is the extent to which the work is an integral part of the alleged employer's business. *Id.* at 805. The hospital is in the business of providing medical treatment to individuals. It is not a teaching institution. Therefore, Harper's teaching services were not an integral part of the hospital's business.

My application of the relevant factors to the totality of circumstances establishes that Harper, as a matter of economic reality, was not economically dependent on the hospital. Thus, I conclude as a matter of law that Harper was an independent contractor, not *an employee when he performed his teaching* services for the hospital. Consequently, even if I were to extend the protection offered by this anti-retaliation provision to former employees, Harper's § 215(a)(3) claim is unsustainable as a matter of law.

Accordingly, it is ORDERED that:

1) The Hospital's motion for summary judgment IS GRANTED;

2) This case is dismissed with prejudice; and,

3) Defendants are awarded their costs.

## JUDGMENT

PURSUANT TO and in accordance with the Memorandum Opinion and Order entered April 8, 1994, by the Honorable Lewis T. Babcock, Judge, it is

ORDERED that judgment is entered in favor of the defendants, San Luis Valley Regional Medical Center and Lutheran Hospital Association, and against the plaintiff, Thomas R. Harper, and the cause of action and Complaint are dismissed. It is

FURTHER ORDERED that the defendants are awarded their costs upon the filing of a bill of costs within ten (10) days of the entry of judgment.