**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

NATALIE R. DELLINGER,

        *Plaintiff-Appellant,*

v.

SCIENCE APPLICATIONS
INTERNATIONAL CORPORATION,

        *Defendant-Appellee.*

    No. 10-1499

SECRETARY OF LABOR; EQUAL
EMPLOYMENT OPPORTUNITY
COMMISSION,

    *Amici Supporting Appellant.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(1:10-cv-00025-JCC-JFA)

Argued: May 10, 2011

Decided: August 12, 2011

Before NIEMEYER, KING, and KEENAN, Circuit Judges.

Affirmed by published opinion. Judge Niemeyer wrote the
opinion, in which Judge Keenan joined. Judge King wrote a
dissenting opinion.

**COUNSEL**

**ARGUED:** Zachary Alan Kitts, COOK, KITTS & FRANCU-ZENKO, PLLC, Fairfax, Virginia, for Appellant. Dean Romhilt, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Amici Supporting Appellant. Robert Sparks, Jr., SPARKS & CRAIG, LLP, McLean, Virginia, for Appellee. **ON BRIEF:** John J. Rigby, MCINROY & RIGBY, LLP, Arlington, Virginia, for Appellant. Robert L. Levin, SCIENCE APPLICATIONS INTERNATIONAL CORPORATION, San Diego, California, for Appellee. P. David Lopez, General Counsel, Vincent J. Blackwood, Acting Associate General Counsel, Paul D. Ramshaw, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C.; M. Patricia Smith, Solicitor of Labor, William C. Lesser, Acting Associate Solicitor, Paul L. Frieden, Counsel for Appellate Litigation, Melissa Murphy, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Amici Supporting Appellant.

---

**OPINION**

NIEMEYER, Circuit Judge:

Natalie Dellinger commenced this action under the Fair Labor Standards Act of 1938 ("FLSA") against Science Applications International Corporation which, she alleges, retaliated against her, in violation of the FLSA's anti-retaliation provision, 29 U.S.C. § 215(a)(3), by refusing to hire her after learning that she had sued her former employer under the FLSA.

The district court granted Science Applications' motion to dismiss, concluding that Dellinger was not an "employee" of Science Applications, as defined in the FLSA, and that the FLSA's anti-retaliation provision does not cover prospective employees.

On appeal, Dellinger contends that the FLSA's anti-retaliation provision protects any employee that has been the victim of FLSA retaliation by "any person," including future employers.

Based on the statutory text, we conclude that the FLSA gives an employee the right to sue only his or her current or former employer and that a prospective employee cannot sue a prospective employer for retaliation. We therefore affirm.

I

According to Dellinger's complaint, Dellinger sued her former employer, CACI, Inc., in July 2009 for alleged violations of the FLSA's minimum wage and overtime provisions. Around the same time, she applied for a job with Science Applications International Corporation. In late August 2009, Science Applications offered Dellinger a job, contingent on her passing a drug test, completing specified forms, and verifying and transferring her security clearance. Dellinger accepted the offer and began the process of satisfying the contingencies.

On the form required for her security clearance, Dellinger was required to list any pending noncriminal court actions to which she was a party, and she listed her FLSA lawsuit against CACI, Inc. Several days after Dellinger submitted her completed form to Science Applications, Science Applications withdrew its offer of employment.

Dellinger commenced this action against Science Applications, alleging that Science Applications' motive for withdrawing its offer was "retaliation and unlawful discrimination based on Ms. Dellinger's exercise of her protected right to file an FLSA lawsuit," in violation of 29 U.S.C. § 215(a)(3). Science Applications filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), contending that Dellinger's complaint did not state a claim for which

relief could be granted under the FLSA because the FLSA's anti-retaliation provision protects only employees, not prospective employees. The district court agreed with Science Applications and granted its motion, dismissing Dellinger's complaint.

This appeal followed.

## II

The Fair Labor Standards Act of 1938 regulates the relationship between employers and their employees to "correct and as rapidly practicable to eliminate" "the existence, in industries engaged in commerce or in the production of goods for commerce, of labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202. To this end, the Act establishes a *minimum wage* that "[e]very employer shall pay to each of his employees," 29 U.S.C. § 206(a), and *maximum hours*, providing that "no employer shall employ any of his employees . . . for a work-week longer than forty hours" unless the employee receives overtime pay at one and one-half times the regular rate, 29 U.S.C. § 207(a). These duties are imposed on employers and the beneficiaries are the employers' employees. In addition, the FLSA protects these substantive rights by prohibiting retaliation, which it defines in relevant part as discrimination "against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." *Id.* § 215(a)(3).

The Act is enforced through criminal prosecutions, 29 U.S.C. § 216(a); private civil actions by employees, *id.* § 216(b); and civil enforcement actions by the Secretary of Labor, *id.* §§ 216(c), 217. *See also Castillo v. Givens*, 704 F.2d 181, 186 n.11 (5th Cir. 1983) (describing causes of action under the FLSA), *overruled on other grounds* by *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988). To

protect their right to a minimum wage and maximum hours, employees are authorized to sue not only for violations of the Act's wage and hours provisions, but also for retaliation. The authorization for employee enforcement, which is included in § 216(b), provides:

> *Any employer* who violates the provisions of section 206 [providing for minimum wages] or section 207 [providing for maximum hours] of this title shall be liable *to the employee or employees affected* in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. *Any employer* who violates the provisions of section 215(a)(3) [prohibiting retaliation] of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) [prohibiting retaliation] of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages. An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

*Id.* § 216(b) (emphasis added).

In this case, Dellinger has not sued her employer, but rather a prospective employer, for retaliation. She alleges that Science Applications, her prospective employer, retaliated against her because she had sued a former employer under the FLSA. This presents the question of whether an applicant for employment is an "employee" authorized to sue and obtain relief for retaliation under § 216(b). Consistent with the FLSA's purpose to regulate the employer-employee relation-

ship and the relevant text of the Act, we conclude that only employees can sue their current or former employers for retaliation under the FLSA and that an applicant is not an employee.

Section 215(a)(3) prohibits retaliation "against any *employee*" because the employee sued the employer to enforce the Act's substantive rights. An "employee" does not, in the Act, exist in a vacuum; rather it is defined in relationship to an employer. Section 203(e)(1) provides that an employee is "any individual employed by an employer." Thus, by using the term "employee" in the anti-retaliation provision, Congress was referring to the employer-employee relationship, the regulation of which underlies the Act as a whole, and was therefore providing protection to those in an employment relationship with their employer.

Consistent with this context in which § 215(a)(3) protects only employees, § 216(b) provides that such employees may sue *only* their employer for retaliation (as well as for violations of the Act's substantive wage and hour protections). Section 216(b) begins with a sentence stating that any employer who violates § 206 (the minimum wage protection) and § 207 (the maximum hours protection) is liable to the "employees affected" by the violations. Section 216(b) then continues with a sentence stating that any "employer" who violates § 215(a)(3) (the anti-retaliation provision) is also liable for legal and equitable remedies.[1] Those two sentences are followed by the provision authorizing employees to file suit under the Act: "An action to recover the liability prescribed in either of the preceding sentences may be maintained

---

[1]The dissent notes that § 216(b) includes remedies of both "employment" and "reinstatement" and reasons that the inclusion of "employment" as a remedy necessarily means that the FLSA protects prospective employees. But this logic is not compelling because "employment" is not limited to prospective employees. That remedy can also be afforded to a former employee hired back to a different position, and its inclusion, therefore, simply reflects Congress' desire to cover all possibilities.

against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." Because an employee is given remedies for violations of § 215(a)(3) only from an employer, Dellinger could only sue Science Applications if she could show that she was an employee and that Science Applications was her employer.

Yet Dellinger cannot make that showing. Although she was an applicant for employment with Science Applications and her application had been approved on a contingent basis, she never began work. Section 203(g) provides that "employ" means "suffer or permit to work." Therefore an applicant who never began or performed any work could not, by the language of the FLSA, be an "employee."

Dellinger argues that because § 215(a), defining "prohibited acts," states that "it shall be unlawful for *any person*" to retaliate against any employee, she can sue any "person," rather than simply her employer. She argues that because Science Applications is a "person" prohibited from retaliating, she therefore can sue Science Applications.

While § 215(a)(3) does prohibit all "persons" from engaging in certain acts, including retaliation against employees, it does not authorize employees to sue "any person." An employee may only sue *employers* for retaliation, as explicitly provided in § 216(b). The use of the term "person" in § 215(a) is attributable to the structure of the provision, which prohibits a number of separate acts in addition to retaliation, not all of which are acts performed by employers. For instance, § 215(a)(1) prohibits any person from transporting "any goods in the production of which any employee was employed in violation of section 206 [minimum wages] or section 207 [maximum hours] of this title." Thus, Congress prohibited the shipment of goods produced by employees who are paid in violation of the Act, and for enforcement, it authorized the

criminal prosecution of any "person" violating the prohibition. *See* 29 U.S.C. § 216(a). Just as there is no remedy for an employee to sue such a shipper, there is also no remedy for an employee to sue anyone but his employer for violations of the anti-retaliation provision. Accordingly, if the person retaliating against an employee is not an employer, the person is not subject to a private civil action by an employee under § 216(b).

Considering the Act more broadly, we cannot overlook the fact that the FLSA was intended at its core to provide minimum wages and maximum hours of work to ensure *employees* a minimum standard of living necessary for "health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). The anti-retaliation provision is included, not as a free-standing protection against any societal retaliation, but rather as an effort "to foster a climate in which compliance with the substantive provisions of the [FLSA] would be enhanced." *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 293 (1960). Thus, the anti-retaliation provision was meant to ensure that employees could sue to obtain minimum wages and maximum hours from their employers without the employers taking adverse action against them for the exercise of those rights. This purpose is inherent in the employment relationship, which is the context in which the substantive provisions operate.

We have been unable to find any case that extends FLSA protections to applicants or prospective employees. Indeed, prior cases have reached the conclusion that we have, applying the anti-retaliation provision only within the employer-employee relationship. *See, e.g.*, *Glover v. City of North Charleston, S.C.*, 942 F. Supp. 243, 245 (D.S.C. 1996) (noting that the "any employee" language in the anti-retaliation provision mandates that the plaintiff have an employment relationship with the defendant); *Harper v. San Luis Valley Reg'l Med. Ctr.*, 848 F. Supp. 911 (D. Col. 1994) (same); *cf. Darveau v. Detecon, Inc.*, 515 F.3d 334, 340 (4th Cir. 2008)

(requiring, as part of a *prima facie* FLSA retaliation case, a showing of "adverse action by the employer"); *Dunlop v. Carriage Carpet Co.*, 548 F.2d 139 (6th Cir. 1977) (holding that an employee could sue his *former employer* when the former employer retaliated against the employee by advising a prospective employer that the employee had previously filed an FLSA suit).[2]

We are sympathetic to Dellinger's argument that it could be problematic to permit future employers effectively to discriminate against prospective employees for having exercised their rights under the FLSA in the past. The notion, however, that any person who once in the past sued an employer could then sue any prospective employer claiming that she was denied employment because of her past litigation would clearly broaden the scope of the FLSA beyond its explicit purpose of fixing minimum wages and maximum hours between employees and employers. We are, of course, not free to broaden the scope of a statute whose scope is defined in plain terms, even when "morally unacceptable retaliatory conduct" may be involved. *Ball v. Memphis Bar-B-Q Co.*, 228 F.3d 360, 364 (4th Cir. 2000).

Dellinger urges us to extend the FLSA's definition of "employee" to protect job applicants, pointing to other statutes under which applicants are protected. In particular, she refers to the Energy Reorganization Act, the National Labor Relations Act ("NLRA"), the Occupational Safety and Health Act ("OSHA"), and the Pipeline Safety Improvement Act. Refer-

---

[2]The dissent, in urging that we rely on *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997), to extend the FLSA to applicants and prospective employees, overlooks the fact that *Robinson* held that "employee" as defined in Title VII included *former* employees. Indeed, we accept that "employee" under the FLSA also affords protection from retaliation to former employees. The issue here is whether the FLSA applies to persons who are not yet employees and who have never worked for the employer. Because *Robinson* deals only with former employees, it does not speak to the issue in this case.

ence to these statutes, however, does not advance her cause. The case cited by Dellinger with respect to the Energy Reorganization Act merely assumed, without deciding, that an applicant was covered under that Act. *See Doyle v. Secretary of Labor*, 285 F.3d 243, 251 n.13 (3d Cir. 2002). While the NLRA does protect prospective employees from retaliation, the Act itself defines "employee" more broadly than does the FLSA, providing that the term "employee" "shall not be limited to the employees of a particular employer" unless explicitly stated. *See* 29 U.S.C. § 152(3). With respect to OSHA and the Pipeline Safety Improvement Act, regulations implementing those statutes have been promulgated to extend protections to prospective employees. *See* 29 C.F.R. § 1977.5(b) (OSHA); 29 C.F.R. § 1981.101 (Pipeline Safety Improvement Act). The Secretary of Labor has not, however, promulgated a similar regulation for the FLSA.

Because we conclude that the text and purpose of the Fair Labor Standards Act of 1938 link the Act's application closely to the employment relationship and because the text of the applicable remedy allows for private civil actions only by employees against their employers, we hold that the FLSA anti-retaliation provision, 29 U.S.C. § 215(a)(3), does not authorize prospective employees to bring retaliation claims against prospective employers. The judgment of the district court is accordingly

*AFFIRMED*.

KING, Circuit Judge, dissenting:

It has been just short of fifteen years since Justice Thomas delivered the opinion on behalf of a unanimous Supreme Court in *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997), a decision that has since stood as the definitive authority on statutory construction. Then, as now, a plaintiff having no active employment relationship with the defendant employer had commenced a lawsuit alleging unlawful retaliation pursu-

ant to a federal remedial statute that, on its face, provides redress solely to "employees." Prior to the Court's reversal of our en banc judgment in *Robinson*, few imagined that a former employee could successfully sue under Title VII of the Civil Rights Act of 1964. In like fashion here, Natalie Dellinger, a prospective employee of Science Applications International Corporation, has brought suit against the company pursuant to the Fair Labor Standards Act of 1938 (the "FLSA" or "Act"). Dellinger's Complaint alleges that Science Applications agreed to hire her but wrongly refused to follow through notwithstanding that she had fulfilled each disclosed condition of employment.

It appears, however, that Ms. Dellinger failed to meet one additional, undisclosed condition: that she not have demonstrated an inclination to hold her bosses accountable under the law. Science Applications terminated the hiring process upon being informed that Dellinger had recently filed suit against her previous employer pursuant to the FLSA. According to the Complaint, the allegations and reasonable inferences of which we are bound to take as true, Science Applications jettisoned Dellinger's paperwork in retaliation for her having exercised her lawful rights. The district court nonetheless ruled that Dellinger had failed to state a viable FLSA claim against Science Applications and dismissed her case. The majority affirms with no discussion of *Robinson* or its established methodology, giving its thumbs-up to the company's conduct and paving the way for other employers to adopt similar practices. Because I cannot escape the conclusion that *Robinson* mandates the opposite result from that reached by the majority today, I respectfully dissent.

I.

A.

In *Robinson*, the Court instructed that the "first step in interpreting a statute is to determine whether the language at

issue has a plain and unambiguous meaning with regard to the particular dispute in the case. Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." 519 U.S. at 340 (citations and internal quotation marks omitted). To determine whether a statutory provision is ambiguous, a court looks "to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 341 (citations omitted).

The *Robinson* Court concluded that the word "employee" in Title VII was ambiguous because (1) there was no temporal qualifier in the statute to indicate that it applied either to current or former employees, *i.e.*, neither the term "current employee" nor the term "former employee" appeared anywhere in Title VII; (2) the statute's prescribed definition of employee also contained no temporal qualifier, meaning that it could include either current or former employees; and (3) the statute referred to "reinstatement" and "hiring" of employees, both of which indicate an expansion of the definition beyond current employees. *See* 519 U.S. at 341-43. The Court continued: "Once it is established that the term 'employees' includes former employees in some sections, but not in others, the term standing alone is *necessarily ambiguous* and each section must be analyzed to determine whether the context gives the term a further meaning that would resolve the issue in dispute." *Id.* at 343-44 (emphasis added).

Finding it necessary, in light of Title VII's ambiguity, to embark on a contextual analysis, the Supreme Court observed that "several sections of the statute plainly contemplate that former employees will make use of the remedial mechanisms of Title VII." 519 U.S. at 345. The Court endorsed the government's position, as amicus curiae, that a restrictive interpretation "would undermine the effectiveness of Title VII by allowing the threat of postemployment retaliation to deter victims of discrimination from complaining to the EEOC, and would provide a perverse incentive for employers to fire

employees who might bring Title VII claims." *Id.* at 346. The Court thus ordered reinstatement of the plaintiff's retaliation action, "[i]t being more consistent with the broader context of Title VII and the primary purpose of [the antiretaliation provision]." *Id.*

*Robinson*, of course, did not arise under the FLSA, but its analytical framework readily admits of a more widely reaching application, and it should therefore powerfully inform our analysis of Dellinger's appeal. Indeed, we have acknowledged "the almost uniform practice of courts in considering the authoritative body of Title VII case law when interpreting the comparable provisions of other federal statutes." *Darveau v. Detecon, Inc.*, 515 F.3d 334, 342 (4th Cir. 2008) (citations omitted). The FLSA's designation of an "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), is more than "comparable" to that of Title VII, which defines the same term as "an individual employed by an employer," 42 U.S.C. § 2000e(f). We have, in fact, called the two definitions "identical." *Darveau*, 515 F.3d at 342.

It is hardly surprising, then, that in *Darveau* we determined that the FLSA, just like Title VII as applied in *Robinson*, protects former employees from retaliation. In so concluding, we discerned "no significant differences in either the language or intent of the two statutes regarding the type of adverse action their retaliation provisions prohibit." 515 F.3d at 342. Judge Motz explained, somewhat prophetically, that it is necessary to afford such protection to former employees "because they often need references from past employers, *they may face retaliation from new employers who learn they have challenged the labor practices of previous employers*, and they sometimes must return to past employers for a variety of reasons, putting them once more at risk of retaliation." *Id.* at 343 (emphasis added) (citation omitted).

## B.

### 1.

We could not have ruled as we did in *Darveau* without acknowledging, though tacitly, that the word "employee," as used in the FLSA, is as necessarily ambiguous there as it is in Title VII. To that extent, at least, *Darveau* binds the majority, but it nonetheless appears to have reached the same conclusion on its own that this is not a "plain language" case. Although it purports to rule "[b]ased on the statutory text," *ante* at 3, the majority also relies on its divination of the purpose of the Act, together with an assessment of the statutory context, to circumscribe who may be considered an employee thereunder. *See ante* at 6-8.

As the majority correctly notes, the FLSA primarily concerns itself with establishing minimum wages and maximum hours for current employees. That notwithstanding, the Act also prohibits the movement in commerce of goods with respect to "the production of which any employee *was* employed" in violation of the wage and hour requirements. 29 U.S.C. § 215(a)(1) (emphasis added). The word "employee" in that sense can refer to former employees, as made clear by the subsection following, which provides that the government may establish a prima facie case of an employer's violation by showing that the overworked or underpaid employee was employed "within ninety days prior to the removal of the goods from" the employee's place of employment. § 215(b).

It is, of course, scarcely remarkable that the FLSA applies to former employees; that was, after all, our plain holding in *Darveau*. The more salient point for our purposes is that the Act's ascription of more than one meaning to the word "employee" establishes, for *Robinson* purposes, that the statutory term is "necessarily ambiguous." I therefore agree with the majority that we must examine contextual clues to ascertain the breadth of the FLSA's antiretaliation provision.

2.

It is unlawful under the FLSA "for any person," not just employers, "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted . . . any proceeding under or related to this chapter[.]" 29 U.S.C. § 215(a), -(a)(3). The Act criminalizes willful violations of § 215, and it also provides civil recourse to "employees affected" by the retaliatory acts described in subsection (a)(3). *See* § 216(a), -(b). Affected employees are entitled to "legal or equitable relief as may be appropriate to effectuate the purposes of" the antiretaliation provision, "including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." § 216(b). Liability attaches to "[a]ny employer," *id.*, which "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." § 203(d).

A plain reading of these several sections of the Act, taken together, indicates that Congress was concerned enough with retaliatory conduct to impose criminal penalties on actual decisionmakers ("any person"), regardless of whether that person could also be considered the employing entity or was acting at the entity's behest. Civil liability for retaliation, on the other hand, is reserved for employers and their agents who are sued by an "employee," which generally means "any individual employed by an employer." §  203(e)(1). Science Applications is undoubtedly an employer subject to the Act, and Ms. Dellinger broadly qualifies as an employee, having once sued her former employer for allegedly violating the FLSA. It does not follow perforce, however, that "Dellinger could only sue Science Applications if she could show . . . that Science Applications was *her* employer." *Ante* at 7 (emphasis added).

It would hardly be a stretch to interpret the FLSA to permit Ms. Dellinger's action, particularly considering that other,

similar remedial statutes already apply to employees in her situation. For example, the National Labor Relations Act ("NLRA") defines the term "employee" to "include any employee, and shall not be limited to the employees of a particular employer." 29 U.S.C. § 152(3). Moreover, as the majority sets forth, regulations implementing the Occupational Safety and Health Act ("OSHA") have construed that statute to afford court access to prospective employees. *See ante* at 10 (citing 29 C.F.R. § 1977.5(b)). This has occurred notwithstanding that OSHA defines "employee" arguably more narrowly than does the FLSA as "an employee of an employer who is employed in a business of *his* employer which affects commerce." 29 U.S.C. § 652(6) (emphasis added).

The majority finds these analogs unpersuasive, observing unremarkably that the NLRA's particularized definition of "employee" more readily lends itself to an expansive reading of who may sue. *See ante* at 10. The majority's point appears to be that the absence of similarly detailed language in the FLSA demands the conclusion that Congress intended the eligibility for bringing a retaliation suit under that statute to be more restrictive. But *Robinson* counsels against just that sort of negative inference:

> [T]hat other statutes have been more specific in their coverage of "employees" and "former employees," *see*, *e.g.*, 2 U.S.C. § 1301(4) (1994 ed., Supp. I) (defining "employee" to include "former employee"); 5 U.S.C. § 1212(a)(1) (including "employees, former employees, and applicants for employment" in the operative provision), proves only that Congress *can* use the unqualified term "employees" to refer only to current employees, not that it did so in this particular statute.

519 U.S. at 341-42 (emphasis in original). Likewise, Congress can certainly use the word "employee" in a manner that

excludes prospective employees or applicants for employment, but that it declined in this case to expressly include them is not, under *Robinson*, reliable evidence of legislative intent to the contrary.

The majority sloughs off the approach taken in administering OSHA, noting simply that "[t]he Secretary of Labor has not . . . promulgated a similar regulation for the FLSA." *Ante* at 10. True enough, we have not been specifically tasked with deciding whether the Secretary could reasonably construe the Act in the manner that Ms. Dellinger seeks. But in dismissing outright her arguments, even in this non-deferential context, are we not implicitly passing upon the objective reasonableness of the construction for which she advocates? I suppose the majority would be constrained to rejoin that permitting retaliation suits absent some sort of employment privity is indeed unreasonable if one accords significance to the FLSA having been fashioned in the crucible of that privity, a proposition enthusiastically endorsed by the majority, *ante* at 8-10. Following that logic, and mindful of OSHA's similarly discrete mandate that an employer "furnish to each of *his* employees . . . a place of employment . . . free from recognized hazards," 29 U.S.C. § 654(a)(1) (emphasis added), the Secretary should be grateful that her occupational safety and health regulations are not before us today, for they would surely wither under the majority's unforgiving gaze.

The majority thus ignores *Robinson* and resorts to its unsanctioned "original intent" methodology, presumably because it cannot adequately square the result it reaches with the Act's substantive context, that is, the literal words of § 216(b) affording victims of retaliation the alternative remedies of "reinstatement" and "employment." Obviously, only former employees can be reinstated, leaving the remedy of employment to those who cannot be reinstated, *i.e.*, those, like Dellinger, who have yet to be employed. *See Robinson*, 519 U.S. at 342 (illustrating intended breadth of term "employee" in Title VII through alternative remedies of reinstatement and

hiring, observing that "because one does not reinstate current employees, that language necessarily refers to former employees") (internal brackets and quotation marks omitted); *see also Broughman v. Carver*, 624 F.3d 670, 677 (4th Cir. 2010) (reiterating "our duty to give effect, if possible, to every clause and word of a statute") (citation omitted). Informed by the context of § 216(b), Ms. Dellinger's construction of the word "employee" in § 215(a) is, in my opinion, compelled by *Robinson*. At the very least, her construction seems eminently reasonable.

I am therefore left to wonder why, in the face of a statute's relative silence as to a material enforcement term, we must presume that a particular avenue is foreclosed because it is not explicitly mentioned, rather than permitted because it is not specifically prohibited. *See Healy Tibbitts Builders, Inc. v. Dir., Office of Workers' Comp. Programs*, 444 F.3d 1095, 1100 (9th Cir. 2006) ("[F]aced with two reasonable and conflicting interpretations, [an act] should be interpreted to further its remedial purpose."). The majority's decision today bucks the trend begun by *Robinson*, which is indisputably toward an expansive interpretation of protective statutes like Title VII and the FLSA to thwart employer retaliation. *See, e.g.*, *Gomez-Perez v. Potter*, 553 U.S. 474, 491 (2008) (concluding that, under applicable provision of ADEA, federal employee may state claim for retaliation as form of discrimination); *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 457 (2008) (ruling that anti-discrimination provisions of 42 U.S.C. § 1981 encompass action for retaliation); *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 178 (2005) (same with respect to Title IX).

Behind this impressive array of authority is the Supreme Court's acknowledgment of the vital role that antiretaliation provisions play in regulating a vast range of undesirable behaviors on the part of employers. *See, e.g.*, *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 129 S. Ct. 846, 852 (2009) (observing that fear of retaliation is pri-

mary motivation behind employees' failure to voice concerns about bias and discrimination and reversing Sixth Circuit's judgment in employer's favor as inconsistent with primary objective of Title VII to avoid harm to employees) (citations omitted); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006) (explaining that liability for Title VII retaliation extends well beyond those actions affecting terms and conditions of employment to include employer's acts outside workplace that are "materially adverse to a reasonable employee or job applicant"). There is no reason to doubt that similar concerns obtain in the FLSA context, as expressed in *Reyes-Fuentes v. Shannon Produce Farm*, 671 F. Supp. 2d 1365, 1368 (S.D. Ga. 2009) ("Congress chose to rely upon information and complaints from employees seeking to vindicate their rights. Plainly, effective enforcement could thus only be expected if employees felt free to approach officials with their grievances") (citations omitted).

In *Robinson* itself, Justice Thomas took note of the plaintiff's and the government's arguments that the essence and continued vitality of Title VII's enforcement scheme depended on a beneficent view of its scope.

> These arguments carry persuasive force given their coherence and their consistency with a primary purpose of antiretaliation provisions: Maintaining unfettered access to statutory remedial mechanisms. . . . [I]t would be destructive of this purpose of the antiretaliation provision for an employer to be able to retaliate with impunity against an entire class of acts . . . . We agree with these contentions and find that they support the inclusive interpretation of "employees" . . . that is already suggested by the broader context of Title VII.

519 U.S. at 346 (citations omitted). Indeed, the conduct in which Science Applications is alleged to have engaged in this very case is especially troubling, vividly demonstrating

through Dellinger's example of how easily it can identify "litigious" applicants and resolve to exclude the entire class from its payroll. It is beyond my comprehension that the majority can shrug its shoulders and countenance this sort of behavior when the Supreme Court has provided the means and encouragement to do something about it.

## II.

Finally, the majority overlooks our decision in *McLaughlin v. Ensley*, 877 F.2d 1207 (4th Cir. 1989), in which we opened the door to a less restrictive interpretation of "employee" in the FLSA context. In *Ensley*, we ruled that the employer's unpaid trainees must be considered employees and entitled to minimum wage payments even though the culmination of the hiring process was made contingent upon the successful completion of the training. *Id.* at 1210. In so concluding, the *Ensley* majority rejected the dissent's view that the trainees did not fit within § 203(e)(1)'s definition of "employee." *See* 877 F.2d at 1210 (Wilkins, J., dissenting) (characterizing "the true legal issue" as being the classification of the trainees as employees under the FTCA).

At Science Applications, Ms. Dellinger found herself in the same position as the trainees in *Ensley*. There was no legitimate impediment between her and the imminent assumption of her job duties. *Cf. Ensley*, 877 F.2d at 1208 (reciting that the trainees could, in theory, have demonstrated themselves unqualified, but observing that "no person, who had completed the training, was not subsequently hired"). *Ensley* is, of course, binding upon subsequent panels, and it requires us to recognize the validity of Ms. Dellinger's FLSA retaliation claim, just as we recognized as valid the trainees' claim for wage payments under the Act.

## III.

For all the foregoing reasons, I am convinced that Ms. Dellinger, an employee within the meaning of the FLSA, has

pleaded a legally sufficient retaliation claim against Science Applications. Inasmuch as the majority holds to the contrary, I respectfully dissent.