Submitted March 1, OAR 291-131-0035 held valid November 27, 2013

GREGORY PAUL WILSON
and Stormii Marie Wilson,
*Petitioners,*

*v.*

DEPARTMENT OF CORRECTIONS,
*Respondent.*

Department of Corrections
A152053

314 P3d 994

Gregory Paul Wilson and Stormii Marie Wilson filed the briefs *pro se.*

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Judy C. Lucas, Senior Assistant Attorney General, filed the brief for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Duncan, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

Petitioner Gregory Wilson, who is an inmate at a Department of Corrections institution, and his wife Stormii Wilson, who is not, challenge the validity of a department rule that prohibits inmates from receiving "[s]exually explicit material which by its nature or content poses a threat or is detrimental to the security, good order or discipline of the facility, inmate rehabilitation, or facilitates criminal activity * * *." OAR 291-131-0035(1)(a).[1] Petitioners contend that the rule violates their freedom of expression as guaranteed

---

[1] OAR 291-131-0035 provides, in part:

"The following materials constitute prohibited mail which shall be confiscated or returned to the sender:

"(1) Sexually Explicit Material:

"(a) Sexually explicit material which by its nature or content poses a threat or is detrimental to the security, good order or discipline of the facility, inmate rehabilitation, or facilitates criminal activity including, but not limited to, the following:

"(A) Sexual Acts or Behaviors:

"(i) Portrayal of actual or simulated sexual acts or behaviors between human beings including, but not limited to, intercourse, sodomy, fellatio, cunnilingus or masturbation.

"(ii) Portrayal of actual or simulated penetration of the vagina or anus, or contact between the mouth and the breast, genitals, or anus.

"(iii) Portrayal of actual or simulated stimulation of the breast, genitals, or anus.

"(iv) Portrayal of actual or simulated acts or threatened acts of force or violence in a sexual context, including, but not limited to, forcible intercourse (rape) or acts of sadomasochism emphasizing the infliction of pain.

"(v) Portrayal of actual or simulated sexual acts or behaviors in which one of the participants is a minor, or appears to be under the age of 18.

"(vi) Bestiality: Portrayal of actual or simulated sexual acts or behaviors between a human being and an animal.

"(B) Excretory Functions: Portrayal of actual or simulated human excretory functions, including, but not limited to, urination, defecation, or ejaculation.

"(C) Personal photographs in which the subject is nude; displays male or female genitalia, pubic area, or anus; or exposes the areola.

"(D) Freestanding Nude or Partially Nude Images: Newspaper and magazine clippings, photocopies, printed web pages, drawings contained in incoming mail, and photographs, with nude or partially nude subjects, whether human or anime (i.e., cartoon), that depict or display male or female genitalia, pubic area or anus, or expose the female areola.

"(b) No distinction shall be made between depictions of heterosexual and homosexual activity in applying these standards.

by Article I, section 8, of the Oregon Constitution. We conclude that the rule, on its face, is not unconstitutional. We therefore reject petitioners' challenge.

Petitioners advance a facial challenge under ORS 183.400(1)[2]—that is, they contend that the department created a rule that is unlawful *per se*, apart from any particular application or set of circumstances. *See State v. Johnson*, 238 Or App 672, 675-76, 243 P3d 805 (2010) (describing facial challenge). In reviewing such challenges, we are limited to consideration of the rule itself, statutory provisions authorizing the rule, and documents bearing on compliance with rulemaking procedures. ORS 183.400(3); *AFSCME Local 2623 v. Dept. of Corrections*, 315 Or 74, 79, 843 P2d 409 (1992). We may declare a rule invalid only if, based on those sources, we conclude that the rule violates a constitutional provision, exceeds the agency's statutory authority, or was adopted without compliance with applicable rulemaking procedures. ORS 183.400(4); *Estes v. Dept. of Corrections*, 210 Or App 399, 401, 150 P3d 1088, *rev den*, 342 Or 523 (2007).

Petitioners do not allege that the adoption of the rule was procedurally invalid. They do, however, assert that the rule exceeds the department's statutory authority and that it is unconstitutional. Their argument regarding the department's authority rests on two premises. The first is that the department has no authority to regulate the conduct of persons such as Stormii Wilson, who is not incarcerated. That premise is unsupportable. The rule regulates the receipt, by inmates, of material sent by noninmates, and regulates noninmates' conduct only when that conduct reaches into the institution and threatens its operations. Petitioners' second premise underlying the theory that the rule exceeds the department's statutory authority is that the department

---

"(c) Sexually explicit material does not include material of a news or information type, for example, publications covering the activities of gay rights or gay religious groups.

"(d) Literary publications shall not be excluded solely because of homosexual themes or references, except for violations of these rules.

"(e) Sexually explicit material may be admitted if it has scholarly value, or general social or literary value."

[2] ORS 183.400(1) provides, "The validity of any rule may be determined upon a petition by any person to the Court of Appeals * * *. The court shall have jurisdiction to review the validity of the rule * * *."

has no authority to promulgate unconstitutional rules. That *ultra vires* argument collapses into the constitutional argument; thus, the only question before us is whether the rule violates Article I, section 8.[3]

To answer that question, we must first construe the rule. In doing so, we note one important feature. In order to justify the confiscation of mail or its return to sender, department authorities must make a number of individualized judgments. First, they must determine that the particular material at issue is sexually explicit. Petitioners do not allege, and we do not conclude, that that language, including the exceptions and a noninclusive list of examples, is unconstitutionally vague. Next, and significantly, the department must determine that the particular sexually explicit material "by its nature or content poses a threat or is detrimental to the security, good order or discipline of the facility, inmate rehabilitation, or facilitates criminal activity." OAR 291-131-0035(1)(a). The rule, then, does not apply to all material that is characterized as "sexually explicit," but only "sexually explicit material *which by its nature or content*" threatens specified harms. *Id.* (emphasis added). The necessary implication of that language is that some sexually explicit material does *not* pose a threat of harm and is therefore permitted, and the necessary implication of that implication is that some department official makes a case-by-case determination as to each piece of sexually explicit material.[4] Such determinations, of course, may be vulnerable to an as-applied challenge.

---

[3] Article I, section 8, of the Oregon Constitution provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

Petitioners also make a cursory and undeveloped argument under the First Amendment; however, they state, "Petitioners in this case frame their argument almost exclusively around Article I, section 8, of the Oregon Constitution." Accordingly, we do not address that undeveloped First Amendment argument. *See State v. McNeely*, 330 Or 457, 468, 8 P3d 212, *cert den*, 531 US 1055 (2000) (declining to address constitutional claims asserted but not developed). In any event, we agree with the reasoning of the court in *Bahrampour v. Lampert*, 356 F3d 969 (9th Cir 2004) (rule prohibiting inmate receipt of sexually explicit material does not violate First Amendment).

[4] If there were a comma between "material" and "which," we would have an altogether different case, because the rule would imply that *all* sexually explicit material is *presumed* to be harmful. By using "which" instead of the more

With that understanding, we readily conclude that OAR 291-131-0035(1) does not, on its face, violate Article I, section 8.

> "Oregon free speech jurisprudence divides laws that might implicate expression into three categories: laws that explicitly and in terms prohibit speech itself, regardless of whether the speech causes or is an attempt to cause harm; laws that prohibit the accomplishment of, or attempt to accomplish, harm and specify that one way that the harm might be caused is by speech; and laws that, without reference to or specification of speech, prohibit the accomplishment of, or attempt to accomplish, harm that, in some circumstances, could be caused by speech. *State v. Plowman,* 314 Or 157, 163-64, 838 P2d 558 (1992), *cert den,* 508 US 974 (1993). An example of the first kind of law is a statute prohibiting obscenity. *See State v. Henry,* 302 Or 510, 732 P2d 9 (1987). Such laws are facially unconstitutional 'unless the scope of the restraint is wholly confined within some historical exception that was well established when the first American guarantees of freedom of expression were adopted and that the guarantees then or in 1859 demonstrably were not intended to reach.' *State v. Robertson,* 293 Or 402, 412, 649 P2d 569 (1982). An example of the second kind of law is a statute prohibiting one person from using a verbal threat to coerce another person into doing something she does not want to do. *Id.* at 415. Such laws are presumptively constitutional unless they are incurably overbroad. *Id.* at 417-18. An example of the third type of law is a trespass statute that, although it does not mention expressive activity, could be enforced against political protesters engaging in political expression. *See City of Eugene v. Lincoln,* 183 Or App 36, 50 P3d 1253 (2002). Such laws are facially constitutional; whether applying them violates Article I, section 8, depends necessarily on the facts of a particular case. *Robertson,* 293 Or at 417."

*State v. Rich,* 218 Or App 642, 646, 180 P3d 744 (2008).

---

grammatically proper "that," the rulemakers create an ambiguity. We resolve that ambiguity as we do in order to avoid a serious risk of unconstitutionality. Under Article I, section 8, rulemakers may not regulate some types of speech on the *presumption* that the secondary effect of such speech is harm. *City of Portland v. Tidyman,* 306 Or 174, 188, 759 P2d 242 (1988) ("Our cases under Article I, section 8, preclude using apprehension of unproven effects as a cover for suppression of undesired expression, because they require regulation to address the effects rather than the expression as such.").

OAR 291-131-0035(1) falls into the second category of rules that might implicate expression. The rule specifies a variety of harms and prohibits expression only when it would pose a threat of one or another of those harms; as explained above, sexually explicit expression that does *not* pose such a threat of harm is not prohibited. Thus, the dispositive question is whether, in limiting expression in order to prevent harm, the rule is incurably overbroad, that is, whether the rule would prevent a harm that obviously lies beyond the authority of the lawmaker to prevent. A classic example is a law prohibiting expression that alarms a person, which would prohibit a physician from telling a patient that her smoking habit is shortening her life expectancy, or a political candidate from telling an audience that, if her opponent is elected, property taxes will double.

Petitioners suggest no situations, and we can contemplate none, in which the application of OAR 291-131-0035(1) would result in the prohibition of obviously unregulable expression. Put another way, we can think of no prohibited speech that *does* threaten prison security, impede inmate rehabilitation, or facilitate crime, yet is nonetheless protected. If such situations exist, they do not amount to *significant* overbreadth. Thus, OAR 291-131-0035(1) does not, on its face, violate Article I, section 8.

OAR 291-131-0035 held valid.