Argued and submitted February 11, text added by amendment to OAR 461-135-0832(10)(b)(B)(viii) and OAR 461-135-0835(1)(e)(B)(iii), effective October 1, 2008, held invalid November 26, 2014, petition for review allowed April 23, 2015 (357 Or 164)

Tim NAY,
*Petitioner,*

*v.*

DEPARTMENT OF HUMAN SERVICES,
*Respondent.*

Oregon Department of Human Services
A150722

340 P3d 720

Matthew Whitman argued the cause and filed the reply brief for petitioner. With him on the opening brief was Cartwright Whitman Baer P.C.

Karla H. Ferrall, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

EGAN, J.

**EGAN, J.**

Petitioner seeks a judicial declaration, pursuant to ORS 183.400(1), that certain amendments to administrative rules promulgated by respondent, the Department of Human Services (DHS), are invalid. Petitioner asserts that DHS improperly amended OAR 461-135-0832(10)(b)(B)(viii) and OAR 461-135-0835(1)(e)(B)(iii) (the challenged rules)[1] to expand Oregon's Medicaid "estate recovery" provisions to encompass assets owned by a Medicaid recipient at the time of the recipient's death, in addition to assets that the recipient conveyed to the recipient's spouse or others within five years of the date of the Medicaid application or anytime thereafter. We agree with petitioner and hold invalid the text added to OAR 461-135-0832(10)(b)(B)(viii) and OAR 461-135-0835(1)(e)(B)(iii) by the 2008 amendments.

## I. STANDARD OF REVIEW

We consider facial challenges to agency rules, such as the challenge by petitioner in this case, as allowed by ORS 183.400. The scope of our judicial review "is limited. [We] examine[] the challenged rules only to determine whether those rules on their face comply with applicable constitutional and statutory requirements." *Oregon Newspaper Publishers v. Dept. of Corrections*, 329 Or 115, 118, 988 P2d 359 (1999). In examining the challenged rules' facial validity, we are limited to consideration of the rule itself, statutory provisions authorizing the rule, and documents dealing with rulemaking procedures. "We may declare a rule invalid only if, based on those sources, * * * the rule violates a constitutional provision, exceeds the agency's statutory authority, or was adopted without compliance with applicable rulemaking procedures." *Wilson v. Dept. of Corrections*, 259 Or App 554, 556, 314 P3d 994 (2013); ORS 183.400(3), (4).

---

[1] Petitioner does not challenge the rules in their entirety. Instead, petitioner challenges the portions added as part of DHS's 2008 amendments to OAR 461-135-0832(10)(b)(B)(viii) and OAR 461-135-0835(1)(e)(B)(iii), effective October 1, 2008, which have been retained in all subsequent versions of the rule. We follow the parties' lead and, for ease of reference, unless otherwise noted, we refer to the November 15, 2010, version of the rule which incorporates the 2008 amendments. We set out the pertinent text of the challenged rules later in this opinion, 267 Or App at 255-56, 262.

Petitioner does not challenge DHS's compliance with rulemaking procedures. Petitioner does, however, assert that the amendments to the challenged rules are unconstitutional and also exceed DHS's statutory authority. Thus, we may consider only the challenged rules and the federal and state statutory provisions authorizing those rules. Further, we may declare the rules invalid only if, based on those sources, we conclude that those rules violate a constitutional provision or exceed the agency's statutory authority. ORS 183.400(3), (4).

On review, petitioner argues that DHS "exceeded its statutory authority" under both federal and state law—specifically, 42 USC section 1396p(b)(4)(B), ORS 416.350(6), and ORS 411.060—and violated the Supremacy Clause of Article VII of the United States Constitution when it amended OAR 461-135-0832 and OAR 461-135-0835. Petitioner's precise argument is that OAR 461-135-0832 and OAR 461-135-0835, as amended in 2008, exceed the scope of both federal and state law, because the challenged amendments purport to allow DHS to engage in estate recovery from assets in which the deceased Medicaid recipient had no legal interest at the time of his or her death.

DHS responds that the challenged amendments are consistent with both federal and state law, contending that petitioner's construction of the federal and state statutes is impermissibly narrow, and that statutory context and the expressed legislative policy (by both Congress and the Oregon legislature) "favors estate recovery and disfavors the use of property transfers to avoid recovery."

Because it is helpful to understanding the parties' arguments, we begin by providing a brief explanation of the applicable federal and state law and delimiting the scope of those statutes.

## II. BACKGROUND

A. *Medicaid law, generally*

Subchapter XIX of the federal Social Security Act, 42 USC § 1396 *et seq.*, established the Medicaid program "for the purpose of providing federal financial assistance to States that choose to reimburse certain costs of medical

treatment for needy persons. Although participation in the Medicaid program is entirely optional, once a State elects to participate, it must comply with the requirements of [subchapter] XIX." *Harris v. McRae*, 448 US 297, 301, 100 S Ct 2671, 65 L Ed 2d 784 (1980); 42 CFR § 430.0. Although the Medicaid program is jointly financed by the federal and state governments, each state administers its own program. 42 USC § 1396; 42 CFR § 430.0. In the course of that administration, each state creates its own "state plan." 42 USC § 1396a; 42 CFR § 430.10. DHS is the administrative agency designated to administer Oregon's state plan. ORS 411.060.

As noted, Oregon's state plan must comply with federal requirements. *Harris*, 448 US at 301; *see generally* 42 USC § 1396a(a), (b); 42 CFR § 430.10; 42 CFR § 430.12(b)(1)(i). One of those federal requirements is that the "[s]tate plan for medical assistance must *** comply with" the federal "estate recovery" provisions, namely 42 USC section 1396p, which relates to liens, adjustments and recoveries of medical assistance correctly paid, transfers of assets, and treatment of certain trusts. *See* 42 USC § 1396a(a)(18).[2]

B.  *Establishing medicaid eligibility: spousal impoverishment and the community spouse resource allowance*

States with a participating Medicaid program must "provide financial assistance to the 'categorically needy'"— which, generally, includes "aged, blind, and disabled [individuals] eligible for benefits under the Supplemental Security Income program"—and "permits a State to extend Medicaid benefits to other needy persons, termed 'medically needy.'"

---

[2] The parties make much of the legal significance of that compliance in relation to the requirement that the state must submit the state plan to the Centers for Medicare and Medicaid Services (CMS) for approval. Petitioner argues that the state has not done so and that that failure is legally significant, because lack of CMS approval affects DHS's ability to enforce the provisions at issue. DHS argues that the issue of whether DHS has submitted a state plan is a factual question that cannot be resolved on this record. Further, DHS contends that, even if petitioner's assertion is correct, lack of CMS approval is not relevant to our review in a facial rule challenge.

Although petitioner may have a valid point relating to DHS's ability to enforce rules that have not been approved by CMS—a situation that we do not address here, because petitioner has not cast DHS's failure to obtain approval as a deficiency in rulemaking procedure—we agree that the failure to obtain CMS approval is not relevant to our review in this facial challenge.

*Harris*, 448 US at 301, 301 n 1; *see* 42 USC § 1396a(a)(10)(A), (C). "Medically needy" persons, who "lack[] the ability to pay for medical expenses, but [have] incomes too large to qualify for categorical assistance[,]" can obtain benefits (if available from the state) if they meet specified income and resource requirements. *Schweiker v. Gray Panthers*, 453 US 34, 37, 101 S Ct 2633, 69 L Ed 2d 460 (1981); 42 USC § 1396a(a)(10)(C). To become eligible for Medicaid, "medically needy" individuals (the applicant or institutionalized spouse) who have resources exceeding the resource thresholds must "spend down" their resources to reach the required resource levels. 42 USC § 1396a(a)(17).

However, there are limits and exclusions on what assets are "available" to pay for the applicant's medical care. 42 USC § 1396r-5(d), (f)(2). For both single and married applicants, the home, a "reasonable" amount of household goods and personal effects, one automobile, and, with certain limitations, a burial space or agreement are *excluded* assets that are not included in the eligibility-related resource calculation. 42 USC § 1382b(a)(1), (2); 42 USC § 1396r-5(c)(5) (clarifying that, for purposes of eligibility determination, "the term 'resources' does not include * * * resources excluded under [42 USC § 1382b(a)]").

The provisions challenged by petitioner generally concern transfers between a married applicant and his or her spouse. Thus, we focus on the eligibility requirements for married individuals. Generally, to determine whether a married applicant's assets exceed the income and resource thresholds, federal law requires that the assets of both the applicant and his or her spouse (the community spouse or well spouse) be considered available to the applicant to pay for the applicant's care, 42 USC § 1396r-5(c), subject to the aforementioned exclusions, 42 USC § 1396r-5(d), (f)(2).

Federal law also allows some other exceptions to that general rule. The purpose of those exceptions is to prevent "spousal impoverishment." That is, federal law aims to "end th[e] pauperization [of community spouses] by assuring that the community spouse has a sufficient—but not excessive—amount of income and resources available [for his or her use] while [his or] her spouse is in a nursing home

at Medicaid expense." HR Rep No 100-105(II), 100th Cong, 1st Sess, *reprinted in* 1988 USCCAN 857, 888 (relating to spousal impoverishment provisions created by the Medicare Catastrophic Coverage Act of 1988, Pub L 100-360, Title III, § 303, which amended 42 USC sections 1396p and 1396r-5). To achieve that end, the community spouse is allowed to shelter or "reserve certain income and assets to meet the minimum monthly maintenance needs he or she will have when the [institutionalized] spouse *** becomes eligible for Medicaid." *Wisconsin Dept. of Health and Family Servs. v. Blumer*, 534 US 473, 478, 122 S Ct 962, 151 L Ed 2d 935 (2002). Those sheltered assets are referred to as the Community Spouse Resource Allowance (CSRA). 42 USC § 1396r-5(f)(1), (2). In other words, the CSRA calculation protects a standard amount of assets from the "spend down." *Id.*

Despite the general rule prohibiting applicants— or their spouses—from transferring assets for less than fair market value in order to qualify for Medicaid, 42 USC § 1396p(c)(1)(A), (c)(2), federal law expressly permits the applicant to transfer the CSRA amount to the community spouse. Indeed, federal law specifically requires that, once a previously over-resource applicant becomes eligible for Medicaid (becoming the Medicaid recipient)—having met the resource threshold—"no resources of the community spouse shall be deemed available" to the recipient. 42 USC § 1396r-5(c)(4). As part of that mandate, the transfer of the Medicaid recipient's resources (in the amount of the CSRA) *"shall* be made [to or for the sole benefit of the community spouse] as soon as practicable after the date of the initial determination of [Medicaid] eligibility[.]" 42 USC § 1396r-5(f)(1) (emphasis added).

C. *Estate recovery: Brief summary of federal law*

As noted, petitioner challenges several amendments to Oregon's administrative rules, revolving around the scope of Oregon's administrative rules governing "estate recovery." Generally, federal law prohibits states from seeking estate recovery of correctly paid Medicaid benefits. 42 USC § 1396p(b)(1). However, federal law provides limited exceptions to that general rule, permitting states to recover

Medicaid benefits from the estates of certain institutional-ized and older beneficiaries. 42 USC § 1396p(b)(1); 42 USC § 1396a(a)(18).

### 1. *Federal estate recovery—42 USC § 1396p(b)*

To determine whether DHS exceeded its statutory authority in promulgating the challenged amendments, we first examine the outer limits of that authority. The federal provision relating to estate recovery, 42 USC § 1396p(b), sets that outer limit.[3]

Estate recovery for medical assistance "may be made only after the death of the individual's surviving spouse, if any" and only when the individual has no sur-viving children who are under age 21, blind, or disabled. 42 USC § 1396p(b)(2)(A). Further, estate recovery gener-ally is to be sought "from the individual's estate[.]" 42 USC § 1396p(b)(1)(A) - (C).

The federal statute governing "estate recovery," 42 USC § 1396p(b)(4),[4] sets forth two definitions of "estate," one mandatory and one permissive. That statute begins by defining estate "with respect to a deceased individual." Paragraph (b)(4)(A) provides the mandatory limits for estate recovery programs administered by the states, requiring that states seek recovery from a Medicaid recipient's "real

---

[3] In interpreting the federal scheme, we use a methodology similar to that set forth in *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009), that is, "we follow the methodology that federal courts have prescribed for interpreting federal stat-utes" by examining the examining the text, context, and legislative history of the federal statutes at issue. *Friends of Columbia Gorge v. Columbia River (S055722)*, 346 Or 366, 377-78, 213 P3d 1164 (2009).

[4] 42 USC section 1396p(b)(4) provides, in part:

"(4) For purposes of this subsection, the term 'estate' *with respect to a deceased individual*—

"(A) *shall* include all real and personal property and other assets included within the individual's estate, as defined for purposes of State pro-bate law; and

"(B) may include, at the option of the State * * *, any other real and per-sonal property and other assets in which the individual had any legal title or interest at the time of death (to the extent of such interest), including such assets conveyed to a survivor, heir, or assign of the deceased individual through joint tenancy, tenancy in common, survivorship, life estate, living trust, or other arrangement."

(Emphases added.)

and personal property and other assets included within the [deceased] individual's estate, as defined for purposes of State probate law" and leaves that definition to state law. 42 USC § 1396p(b)(4)(A).

On the other hand, 42 USC section 1396p(b)(4)(B) is permissive.[5] It allows states the option to enact legislation and promulgate rules that enable the state to recover from a more expansive definition of assets, defined as

> "any other real and personal property and other assets in which the [deceased] individual had any legal title or interest at the time of death (to the extent of such interest), including such assets conveyed to a survivor, heir, or assign of the deceased individual through joint tenancy, tenancy in common, survivorship, life estate, living trust, or other arrangement[.]"

Under that definition, it becomes clear from the plain text of the statute that the assets subject to estate recovery include property subject to probate, 42 USC § 1396p(b)(4)(A), but also reaches "assets conveyed" to another person through any one of the listed methods, 42 USC § 1396p(b)(4)(B).

Virtually all of the methods for conveyance to another person included in the definition of "estate" are legal terms—namely "joint tenancy, tenancy in common, survivorship, life estate, living trust"—referencing various methods of transferring legal title or interest that generally occur by operation of law on account of the Medicaid recipient's death. The term at the core of petitioner's challenge, "other arrangement," is the outlier. That term is not defined in the statutes, nor is it a well-defined legal term to which we can attribute a legal meaning.

Thus, we generally assume that such a nonspecific term in a series, such as "other arrangement" shares the same qualities as the specific terms that precede it. *Christopher v. SmithKline Beecham Corp.*, ___ US ___, ___, 132 S Ct 2156, 2170, 183 L Ed 2d 153 (2012) (noting that the term including indicates that the examples enumerated in the text are illustrative and not exhaustive); *Washington State Dept. of Social and Health Servs. v. Guardianship*

---

[5] Oregon has opted to implement the permissive definition.

*Estate of Keffeler,* 537 US 371, 384, 123 S Ct 1017, 154 L Ed 2d 972 (2003) (utilizing the interpretative canons *ejusdem generis,* noting that, "[w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words" (brackets in original)).

Therefore, we conclude that "other arrangement" in the context of the definition of "estate" means that assets transferred from the deceased "individual"—the Medicaid recipient—by operation of law on account of or occurring *at the recipient's death* are included in that definition. Thus, the "including" clause in the federal permissive definition of "estate" incorporates nonprobate assets that are transferred from the Medicaid recipient to a third party by operation of law or other mechanism, but in which the deceased Medicaid recipient retained legal title or "any" interest *at the time of his or her death.*

Other aspects of the statute also support that conclusion. Congress defined estate with respect to a "deceased individual" (deceased Medicaid recipient), mandated recovery from the deceased Medicaid recipient's probate assets, 42 USC § 1396p(b)(4)(A), and incorporated the requirement that the deceased Medicaid recipient "ha[ve] any legal title or interest at the time of death" into the permissive definition. Therefore, the plain text of 42 USC sections 1396p(b)(4)(A) and (B) indicates that the federal statute limits estate recovery to assets and property held "at the time of death." That definition sets the scope of authority granted to the states and DHS in promulgating its rules on estate recovery.

DHS makes several arguments relating to the scope of federal law, which we find prudent to address here. First, DHS argues that the federal statute and surrounding context does not limit estate recovery to assets owned or held by the Medicaid recipient at his or her death. Specifically, DHS responds that "estate" is defined sufficiently broadly in 42 USC section 1396p(b)(4)(B) to encompass assets that the Medicaid recipient fully transferred away during his or her life. DHS further contends that Congress's expressed legislative policy "favors estate recovery and disfavors the

use of property transfers to avoid recovery" and that "nothing in the *** context of 42 USC section 1396p suggests that states are prohibited from recovering assets that were transferred between spouses prior to an application for medical assistance benefits."

DHS also asserts that the "overall effect" of the contextual provisions it cites is to "prevent the impoverishment of the spouse, while at the same time providing for recovery of the cost of assistance, after the deaths of the recipient and [the] recipient's spouse, from *any asset in which the recipient had some type of interest.*" (Emphasis added.)

Specifically, DHS contends that the context of federal law, namely 42 USC section 1396p(b)(1) and (c)(1),[6] "provides a definition of 'asset' that is broad enough to include an interspousal transfer."

We reject DHS's argument that, based on expressed legislative policy and context, federal law does not limit estate recovery to assets owned or held by the Medicaid recipient at his or her death. Although we may look to context and legislative history when construing a statute, the best indicator of the legislature's intent is the text of the statute itself. *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009) (noting that, "there is no more persuasive evidence of the intent of the legislature than the words by which the legislature undertook to give expression to its wishes" (citations and internal quotation marks omitted)).

Taken in isolation, the portions of 42 USC section 1396p cited by DHS appear to support its position. But, taken as a whole, the text of 42 USC section 1396p persuades us that DHS is incorrect. As indicated above, the plain text of 42 USC section 1396p(b)(4)(A) and (B) limits estate recovery to assets and property in which the Medicaid recipient "had any legal title or interest at the time of death," including nonprobate assets transferred by operation of law due to the decedent's death, but in which the Medicaid recipient

---

[6] As noted above, 42 USC section 1396p(b)(1) generally prohibits states from seeking estate recovery of correctly paid Medicaid benefits, but also provides limited exceptions to that general rule. 42 USC section 1396p(c)(1) generally provides for a period of Medicaid ineligibility for the Medicaid recipient if the recipient and his or her spouse dispose of assets for less than fair market value.

had retained an interest at the time of his or her death. *See, e.g.,* 42 USC § 1396p(a)(1) (providing that "[n]o lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan," with limited exceptions); 42 USC § 1396p(b)(2) (providing that "[a]ny adjustment or recovery under [42 USC section 1396p(a)](1) may be made only after the death of the individual's *surviving* spouse, if any," and only if the Medicaid recipient does not also have a "surviving" child that is under age 21, blind, or disabled (emphasis added)); 42 USC § 1396p(b)(1) (disallowing recovery of medical assistance, except with limited exceptions, *i.e.,* from certain individual's estates or upon sale of certain real property on which a lien has been imposed); 42 USC § 1396p(c)(1)(A) (providing that, if a Medicaid recipient or the recipient's spouse "disposes of assets for less than fair market value * * * the individual is ineligible for medical assistance" during a specified period during his or her life); 42 USC § 1396p(c)(2)(A) (providing that "[a]n individual shall not be ineligible for medical assistance by reason of [42 USC section 1396p(c)](1) to the extent that—(A) the assets transferred were a home and title to the home was transferred to" the Medicaid recipient's spouse, among others).

Likewise, we reject DHS's contention that the context of federal law, "provides a definition of 'asset' that is broad enough to include an interspousal transfer." Although DHS is correct that the definition of "asset" is broad, the use of that term in the definition of "estate" plainly limits estate recovery from the broad pool of assets owned or otherwise held by the Medicaid recipient at the time of his or her death. 42 USC § 1396p(b)(4) (defining "'estate', with respect to a deceased individual"); 42 USC § 1396p(b)(4)(A) (defining the *mandatory* provision for estate recovery in terms of the Medicaid recipient's probate estate); 42 USC § 1396p(b)(4)(B) (including in the definition of "estate" "assets in which the [Medicaid recipient] had any legal title or interest at the time of death").

With regard to the "expressed legislative policy," we likewise reject DHS's argument. Although, according to DHS, that policy "favors estate recovery and disfavors the use of property transfers to avoid recovery," the plain text of

the federal statute belies DHS's position. *See, e.g.*, 42 USC § 1396p(b)(1) (providing specific, limited exceptions to the general rule that "[n]o adjustment or recovery of any medical assistance * * * may be made"); 42 USC § 1396p(c)(2)(A) (providing that a Medicaid recipient does not become ineligible due to a disposal of assets for less than fair market value if the Medicaid recipient transfers title to a home to the recipient's spouse); 42 USC § 1396p(c)(2)(B) (providing that a Medicaid recipient does not become ineligible due to a disposal of assets for less than fair market value if the assets were transferred to the spouse or to another for the sole benefit of the recipient's spouse, transferred to the recipient's blind or disabled child (or a special needs trust for that child's benefit), or transferred to a trust for the benefit of a disabled person under 65 years of age).

The provision DHS cites—42 USC section 1396p(c)(1), which creates eligibility penalties for certain transfers of property for less than fair-market value—generally governs transfers made for the purpose of qualifying for medical assistance. However, in order to qualify for Medicaid benefits (and to fund the CSRA), it is necessary for the Medicaid recipient to transfer assets. 42 USC § 1396r-5(f)(1) (providing that a Medicaid recipient may, without regard to the asset transfer restrictions in 42 USC section 1396p(c)(1), transfer an amount equal to the CSRA to the extent that the resources transferred are transferred to (or for the sole benefit of) the community spouse). The transfer of the CSRA amount "*shall* be made as soon as practicable after the date of the initial determination of eligibility, taking into account such time as may be necessary to obtain a court order [for the support of the community spouse]." 42 USC § 1396r-5(f)(1) (emphasis added); *see also* 42 USC § 1396r-5(c)(2) ("In determining the resources of an institutionalized spouse at the time of application for benefits under this subchapter * * *—(A) except as provided in subparagraph (B), all the resources held by either the institutionalized spouse, community spouse, or both, shall be considered to be available to the institutionalized spouse, and (B) resources shall be considered to be available to an institutionalized spouse, *but only to the extent that the amount of such resources exceeds the amount [of the CSRA]* (as of the time of application for

benefits)." (Emphasis added.)); 42 USC § 1396r-5(c)(4) (with regard to the eligibility determination, after the applicant becomes eligible "no resources of the community spouse shall be deemed available to the institutionalized spouse"). Thus, in light of the plain text used in the whole of the statute, the specific provisions that DHS cites do not support its position that the legislative policy expressed in the statutes disfavoring the use of property transfers has any relation to estate recovery.

### 2. *Oregon estate recovery—ORS 416.350*

Having delimited the scope of federal law, we turn to examine Oregon's estate recovery statutes. Pursuant to 42 USC section 1396p(b), Oregon has enacted laws that authorize it to recover correctly paid medical assistance from a recipient's estate. ORS 416.310 - 416.351.[7]

The relevant portion of Oregon's estate recovery statute, ORS 416.350, provides, in part:

"(2)   Medical assistance pursuant to ORS chapter 414 paid to or on behalf of an individual who was 55 years of age or older when the individual received the assistance, or paid to or on behalf of a person of any age who was a permanently institutionalized inpatient in a nursing facility, intermediate care facility for persons with intellectual disabilities or other medical institution, may be recovered from the estate of the individual or from any recipient of property or other assets held by the individual at the time of death including the estate of the surviving spouse. Claim for such medical assistance correctly paid to or on behalf of the individual may be established against the estate, but the claim may not be adjusted or recovered until after the death of the surviving spouse, if any, and only at a time when the individual has no surviving child who is under 21 years of age or who is blind or permanently and totally disabled. Transfers of real or personal property by recipients of such aid without adequate consideration are voidable and may be set aside under ORS 411.620 (2).

---

[7] When construing a statute, our paramount goal is to discern the legislature's intent, by looking first to the text and context of the statute. *Gaines*, 346 Or at 171. When we consider the text of a statute we give words of common usage their plain and ordinary meaning while also giving effect to the "well-defined legal meanings" of legal terms. *State v. Contreras*, 253 Or App 693, 695, 291 P3d 799 (2012) (citing *Fresh v. Kraemer*, 337 Or 513, 520, 99 P3d 282 (2004)).

"\* \* \* \* \*

"(6)(a)  'Estate' includes all real and personal property and other assets in which the deceased individual had any legal title or interest at the time of death including assets conveyed to a survivor, heir or assign of the deceased individual through joint tenancy, tenancy in common, survivorship, life estate, living trust or other similar arrangement."

Like its federal counterpart, the text of ORS 416.350(6)(a) defines estate to include property "in which the deceased individual had any legal title or interest at the time of death."

ORS 416.350(2), in turn, provides the limits of estate recovery. That statute allows recovery from the estate of a deceased Medicaid recipient or any person—including the "estate of the surviving spouse"—who received property that was "held by the [Medicaid recipient] at the time of death." Thus, by incorporating the definition of "estate" into the text of ORS 416.350(2), the legislature effectively allowed recovery for medical assistance from either of two sources: (1) from the Medicaid recipient's estate (*i.e.,* from the "estate of the individual," meaning property that the Medicaid recipient owned at the time of death), or (2) from a third party who had received property that the Medicaid recipient had held at the time of his or her death (*i.e.,* "from any recipient of property or other assets held by the individual at the time of death including the estate of the surviving spouse").

The legislature also limited *when* Oregon could recover for medical assistance, namely "after the death of the surviving spouse" of a married Medicaid recipient, "and only at a time when the individual has no surviving child who is under 21 years of age or who is blind or permanently and totally disabled." ORS 416.350(2).

Thus, under ORS 416.350, DHS may recover medical assistance payments from either the estate of the Medicaid recipient *or* from any person—including the surviving spouse or the surviving spouse's estate—who has received property or assets *that were held by the Medicaid recipient at the time of his or her death.* ORS 416.350(2), (6)(a).

Incorporating a virtually identical "including" clause into the definition of estate, ORS 416.350(6)—like its federal counterpart—incorporates nonprobate assets that are transferred from the Medicaid recipient to a third party by operation of law or other mechanism, but in which the deceased Medicaid recipient retained legal title or interest at the time of his or her death.

With that understanding of the scope of federal and state law, we turn to examine the challenged rules.

### III. DETERMINATION OF RULE VALIDITY

At issue in this case are two administrative rules pertaining to estate recovery. The first is OAR 461-135-0832(10)(b)(B)(viii), which deals with the definition of "estate" for estate recovery purposes. The second is OAR 461-135-0835(1)(e)(B)(iii), dealing with the application of that definition on the limits of estate recovery. The amendments at issue in this case took effect on October 1, 2008, and are applicable to Medicaid recipients who died on or after October 1, 2008. Petitioner asserts that the definition of the term "estate" in OAR 461-135-0832 and OAR 461-135-0835, as amended, exceeds the scope of federal and state law, because the challenged amendments purport to allow DHS to engage in estate recovery from assets in which the deceased Medicaid recipient had no legal interest at the time of his or her death.

### A.  *Definitions—OAR 461-135-0832*

Before the adoption of the challenged amendments, the basic definition of "estate" included property and other assets "in which a recipient had any legal title or ownership or beneficial interest at the time of death," in addition to transfers by tenancy by the entirety, joint tenancy, tenancy in common, survivorship, life estate, living trust, annuity, or other similar arrangement. In the 2008 amendments, the definition of estate was "expanded" from that "basic" definition to include "other similar arrangements," which encompasses interspousal transfers made within 60 months of the date of request for benefits, as another example of assets that fall within the definition of "estate"—the text that is being challenged in this case.

Thus, OAR 461-135-0832 provides the following definitions, as relevant here.[8]

"(1) 'Assets' means all income and resources of an individual, including any income or resources that an individual is entitled to at the time of death, including any income or resources to which the individual is entitled, but does not receive, because of action: by the individual; the individual's spouse; by a person, including a court or administrative body with legal authority to act in place of or on behalf of the individual; or by any person, including any court or administrative body, acting at the direction or upon the request of the individual.

"* * * * *

"(8) 'Date of request' means the date an individual or someone authorized on behalf of the individual contacts [DHS] or uses another appropriate method to request benefits (see OAR 461-115-0150). The request may be oral or in writing. It starts the application process.

"* * * * *

"(10) 'Estate' means:

"* * * * *

"(b) With respect to the collection of payments made for public assistance provided on or after July 18, 1995:

"* * * * *

"(B) For recipients who die on or after October 1, 2008, all real property, personal property, or other assets, * * * in which a recipient had any legal title or ownership or beneficial interest at the time of death of the [Medicaid] recipient, including real property, personal property, or other assets conveyed by the recipient to, subsequently acquired by, or traceable to, a person, including the recipient's spouse and any successor-in-interest to the recipient's spouse, through:

"(i) Tenancy by the entirety;

"(ii) Joint tenancy;

"(iii) Tenancy in common;

---

[8] As previously explained, 267 Or App at 241 n 1, we quote the November 15, 2010, version for convenience.

"(iv)     Not as tenants in common, but with the right of survivorship;

"(v)     Life estate;

"(vi)     Living trust;

"(vii)     Annuity purchased on or after April 1, 2001; or

"(viii) Other similar arrangement, *such as an interspousal transfer of assets, including one facilitated by a court order, which occurred no earlier than 60 months prior to the first date of request established from the recipient's and the recipient's spouse's applications, or at any time thereafter, whether approved, withdrawn, or denied, for the public assistance programs referenced in OAR 461-135-0835(2).*

"* * * * *

"(12)     'Interest' means any form of legal, beneficial, equitable or ownership interest.

"(13)     'Interspousal transfer' means any transfer, or chain of transfers, that effectively transfers title or control of an asset, or an interest in an asset, from one spouse to another, including: direct transfers between spouses, transfers from one or both spouses to a trust, and transfers from one trust to another trust.

"* * * * *

"(17)     'Legal title' means legal ownership by a person.

"* * * * *

"(23)     'Person' means any individual, corporation, association, firm, partnership, trust, estate or other form of entity.

"* * * * *

"(30)     'Time of death' means the instant of death, the time and date of which shall be established in the place of the decedent's residence; in no case shall time of death be construed to mean a time after which an interest in real or personal property or other assets may:

"(a)     Pass by survivorship or other operation of law due to the death of the decedent; or

"(b)     Terminate by reason of the decedent's death."

OAR 461-135-0832 (emphases omitted; bold and italics inserted to indicate challenged text).[9]

To answer the question whether DHS exceeded the scope of its statutory authority pursuant to ORS 416.350 when it made the challenged amendments to OAR 461-135-0832(10)(b)(B)(viii), we must construe the rule.[10]

Under OAR 461-135-0832(10)(b)(B)(viii), "estate" is defined to include "all real property, personal property, or other assets" which includes all income and resources that the Medicaid recipient was "entitled to at the time of death," whether or not the Medicaid recipient is in possession of those interests at the time of death. OAR 461-135-0832(1) (defining "assets") (emphasis omitted).

The definition of estate further requires that the Medicaid recipient not merely be "entitled to" the property but to "ha[ve] *** legal title or ownership or beneficial interest at the time of death." As indicated above, legal title is defined as "legal ownership by a person." OAR 461-135-0832(17). The Medicaid recipient's "time of death" means the "instant of death" which "shall [not be construed] to mean a time after which an interest in real or personal property or other assets may *** [p]ass by survivorship or other operation of law due to the death of the decedent; or *** [t]erminate by reason of the decedent's death." OAR 461-135-0832(30) (emphases omitted).

Thus, the definition of "estate" captures a specific pool of assets, namely real property, personal property, and all other income or resources to which the Medicaid recipient was "entitled" or in which the recipient had legal title, ownership, or a beneficial interest at the time of death. And, by implication, the rule contemplates that property interests

---

[9] Recently, DHS has made several changes to the rule, including changes to the definition of estate, but retained the challenged text. Those changes are not applicable to this case.

[10] To do that, our role is "the same as *** in determining the meaning of a statute, *viz.*, to determine the meaning of the words used, giving effect to the intent of the enacting body. The text of the regulation itself is the best evidence of the enacting body's intent and is the starting point for our inquiry." *George v. Myers*, 169 Or App 472, 480, 10 P3d 265 (2000), *rev den*, 331 Or 692 (2001) (internal quotation marks and citations omitted; omission in original).

may terminate or pass to third parties—by survivorship or operation of law—on account of the Medicaid recipient's death. *Id.*

The definition of estate also specifically includes property "conveyed by the [Medicaid] recipient to, subsequently acquired by, or traceable to, a person[.]"[11] OAR 461-135-0832(10)(b)(B) (emphasis omitted). That plain text makes clear that the definition of estate specifically encompasses any property that is conveyed to or otherwise subsequently transferred to a person by the Medicaid recipient after he or she has become eligible to receive Medicaid benefits, but—because the Medicaid recipient must have an interest in the property at the time of death—the transfer must occur at (or on account of) the Medicaid recipient's death. OAR 461-135-0832(10)(b)(B); *see also* OAR 461-135-0832(30) (defining "time of death").

Finally, the definition of estate specifically includes several methods of conveyance through which that other person may obtain an interest in property, setting out a list of legal arrangements (*e.g.*, tenancy by the entirety, joint tenancy, tenancy in common, "[n]ot as tenants in common, but with the right of survivorship"). Thus, the definition of estate in OAR 461-135-0832 includes direct transfers from the Medicaid recipient to another person, as well as any transfers that occur by operation of law on account of the recipient's death. OAR 461-135-0832(10)(b)(B), (30).

Utilizing wording similar to that of ORS 416.350, that list of legal arrangements also includes the terminology "other similar arrangement." However, unlike with the federal statute, 42 USC section 1396p ("other arrangement"), and the Oregon statute, ORS 416.350 ("other similar arrangement"), DHS did not leave the parameters of that term undefined. Instead, the rule delineates the contours of "other similar arrangement" as an "interspousal transfer of assets, including [transfers] facilitated by a court order, which occurred no earlier than 60 months prior to the first

---

[11] Person is defined as "any individual, corporation, association, firm, partnership, trust, estate or other form of entity," OAR 461-135-0832(23), but, as used in the definition of "estate," also includes the Medicaid recipient's spouse and any successor-in-interest to the spouse, OAR 461-135-0832(10)(b)(B).

date of request[12] * * * or at anytime thereafter[.]" OAR 461-135-0832(10)(b)(B)(viii) (emphasis omitted).

Based on the plain wording of OAR 461-135-0832(10)(b)(B)(viii), it becomes clear that "other similar arrangement" captures any transfer between spouses—including direct transfers, transfers from one or both spouses to a trust, transfers from one trust to another trust, or transfers facilitated by a court order, OAR 461-135-0832(13)—that transfers title to an asset, control of an asset, or an interest in an asset, and that occurs no earlier than 60 months before the initial date of application for Medicaid benefits or "at any time thereafter."

According to petitioner, it is that text—defining the contours of "other similar arrangement"—that exceeds the scope of federal and state law. Because we conclude that DHS's proffered interpretation of "other similar arrangement" is at odds with the remainder of the DHS's definition of estate and federal state law, we agree.

DHS acknowledges that the term "other similar arrangement" in the expanded definition of estate, "provides for [estate] recovery * * * from a spouse's estate to the extent the spouse received property or assets from the recipient by an 'interspousal transfer' that occurred within five years before" the date of the Medicaid application.

That interpretation of "other similar arrangement," stands at odds with the remainder of the definition of estate. The initial portion of the rule plainly limits estate recovery to property in which the Medicaid recipient held an interest *at the time of death* or that was *transferred on account of the Medicaid recipient's death*. That text complies with 42 USC section 1396p(b)(4)(B) and ORS 416.350. In contrast, the breadth of the term "other similar arrangement" in OAR 461-135-0832(10)(b)(B)(viii) plainly includes transfers of assets that occurred before the Medicaid recipient's death. For example, by its plain terms, the "date of request" (to obtain Medicaid—or other program—benefits) can only occur during a Medicaid applicant's

---

[12] Generally, the "date of request" is the date that an individual applies for Medicaid benefits through DHS. OAR 461-135-0832(8).

lifetime. OAR 461-135-0832(8); *see also* OAR 641-115-0071 (discussing application process); OAR 461-115-0020 (same); OAR 461-115-0230 (same). Thus, DHS's amendments to OAR 461-135-0832(10)(b)(B)(viii)—which expanded the definition of estate by adding to the scope of "other similar arrangement"—exceeds the scope of the authority granted to DHS by ORS 416.350 and 42 USC section 1396p(b)(4)(B).

Arguing in support of the rule, DHS contends that petitioner's challenge fails because the federal and state statutes do not require that the Medicaid recipient "own" property at the time of his or her death. Specifically, DHS argues that petitioner "incorrectly equates the phrase 'any legal title or interest' [found in 42 USC section 1396p(b)(4)(B) and ORS 416.350] with [the concept of] 'ownership' of an asset." In other words, according to DHS, a person "may continue to have an interest—legal, equitable, or beneficial—in an asset even after transferring ***property," such as an interest in marital property, ORS 107.105(5), or an interest under probate law, such as the elective share. Thus, in DHS's view, because those laws provide for a continuing residual interest that remains with the transferor, the rule is not inconsistent with federal or state law because the state can recover from assets transferred before the recipient's death.

We turn to DHS's argument under Oregon probate law. As noted, DHS contends that, under Oregon probate law, the surviving spouse's right to take the elective share means that the first spouse retained some continuing residual interest in an asset transferred before his or her death. A brief review of the elective share statutes leads to the conclusion that a spouse's statutory right to make such an election is just that: a statutory right and not an inchoate property interest retained by the spouse. ORS 114.600(1) ("[T]he surviving spouse of the decedent may elect to receive the elective share."); ORS 114.610 (designating the manner in which a surviving spouse can "claim" the elective share); ORS 114.615 (noting that, to determine whether payment is required to satisfy the elective share, the court shall consider the values of decedent's probate estate, nonprobate estate, probate transfers to the surviving spouse, and nonprobate transfers to the surviving spouse, in addition to the surviving spouse's estate; limiting payments to satisfy the

elective share to amounts exceeding the value of the surviving spouse's estate and the decedent's probate and nonprobate transfers to the surviving spouse); ORS 114.635(2) (excluding from the "augmented estate" "[a]ny property that is irrevocably transferred before the death of the decedent spouse"); ORS 114.725 (granting the court discretion to reduce or deny the elective share amount "[i]f the decedent and the surviving spouse were living apart at the time of the decedent's death, whether or not there was a judgment of legal separation" after considering, among other things, "the contribution of the surviving spouse to the property of the decedent in the form of * * * transfers of property"). Thus, we reject DHS's argument that the elective share statutes are indicative of a "retained" interest in property after one spouse has transferred property to another.

Next, we examine DHS's argument that Oregon domestic relations law also provides for a married transferor to retain a continuing residual interest in property transferred. According to DHS, "should the marriage end in divorce," the provision in ORS 107.105(1)(f)(E)—providing that "the rights of the parties in the marital assets shall be considered a species of co-ownership"—presumes that the spouses retain a half-interest, which "continue[s] until [the decedent transferor's] death, when they terminate and merge with the interests of [his or] her surviving spouse."

We similarly reject that argument. Oregon is a separate-property state. *See* Or Const, Art XV, § 5 ("The property and pecuniary rights of every married woman, at the time of marriage or afterwards, acquired by gift, devise, or inheritance shall not be subject to the debts, or contracts of the husband; and laws shall be passed providing for the registration of the wife's seperate[sic] property." (Alteration in original.)). Therefore, the presumption of co-ownership does not arise until after the parties have filed to dissolve their marriage. ORS 107.105(1)(f)(E) ("*Subsequent to the filing of a petition for annulment or dissolution of marriage or separation*, the rights of the parties in the marital assets shall be considered a species of co-ownership[.]" (emphasis added)). Thus, for DHS's argument to be successful, the spouses would have to engage in the interspousal transfer while married, but *after* the petition to dissolve the marriage has been filed.

Only under those facts would the transferor spouse retain an interest in the transferred property from which the state could recover. However, under general principles of property law in the state of Oregon, DHS's argument fails.

Having considered and rejected DHS's arguments in support of the rule, we return to square one in our analysis. Our task is to determine whether OAR 461-135-0832(10)(b)(B)(viii) exceeds federal and state statutory authority. We conclude that it does and hold the challenged language invalid.

B. *Limits on estate recovery—OAR 461-135-0835*

Finally, we turn to examine petitioner's challenge to OAR 461-135-0835(1)(e)(B)(iii). Petitioner asserts that, in amending the rule, DHS exceeded its statutory authority granted by 42 USC section 1396p(b)(4)(B) and ORS 416.350.

The challenged rule, OAR 461-135-0835(1)(e)(B) provides, in relevant part:

"(1)    In the * * * OSIPM * * * program[]:

"* * * * *

"(e)    For a recipient who died on or after October 1, 2008:

"* * * * *

"(B)    In addition, [DHS] has a claim against the estate of the recipient's spouse for public assistance paid to the recipient, but only to the extent that the recipient's spouse received property or other assets from the recipient through any of the following:

"(i)    Probate.

"(ii)    Operation of law.

"(iii)    *An interspousal transfer, including one facilitated by a court order, which occurs*:

"(I)    *Before, on, or after October 1, 2008; and*

"(II)    *No earlier than 60 months prior to the first date of request (see OAR 461-135-0832) established from the applications of the recipient and the recipient's spouse, or at any time thereafter, whether approved, withdrawn, or denied, for the public assistance programs referenced in section (2) of this rule.*"

OAR 461-135-0835(1)(e)(B) (bold and italics inserted to indicate challenged text). DHS acknowledges that the prior version of the rule allowed estate recovery from a surviving spouse's estate "'only to the extent that the surviving spouse received property or other assets from the pre-deceased spouse' through probate or operation of law." DHS further acknowledges that, after the challenged amendments were made, the rule now allows for estate recovery from a surviving spouse's estate "to the extent [that] the spouse received property or assets from the recipient" through probate, operation of law, or "by an 'interspousal transfer' that occurred within five years before the recipient's date of request for benefits." We conclude that DHS again exceeded its statutory authority by including the interspousal transfer in the class of transfers to the recipient's spouse from which DHS may recover.

By including the "interspousal transfer" text in the pool of assets from which the state can recover from the surviving spouse's estate, the rule includes assets that necessarily were transferred before the recipient's death. Because we have concluded that such predeath transfers are antithetical to the definition of estate as provided by federal and state law (requiring that the recipient have an interest in the property at the time of his or her death), we conclude that DHS's amendments of OAR 461-135-0835(1)(e)(B)(iii) relating to interspousal transfers exceeded its statutory authority granted by ORS 416.350 and 42 USC section 1396p, and we hold those provisions invalid.[13]

Because we have concluded that the challenged provisions exceed federal and state statutory authority, we do not reach petitioner's constitutional challenges.

Text added by amendment to OAR 461-135-0832(10)(b)(B)(viii) and OAR 461-135-0835(1)(e)(B)(iii), effective October 1, 2008, held invalid.

---

[13] To the extent that the challenged text remains in subsequent versions of OAR 461-135-0832 and OAR 461-135-0835, we conclude that that text is equally invalid.