Argued and submitted September 15, 2015, affirmed August 31, petition for review denied December 22, 2016 (360 Or 751)

Joseph M. DINICOLA,
*Plaintiff-Appellant,*

*v.*

STATE OF OREGON,
and Oregon University System,
*Defendants-Respondents.*

STATE OF OREGON,
and Oregon University System,
*Third-Party Plaintiffs,*

*v.*

SERVICE EMPLOYEES
INTERNATIONAL UNION, LOCAL 503;
and Oregon Public Employees Union,
*Third-Party Defendants-Respondents.*

Marion County Circuit Court
08C23184; A150967

382 P3d 547

Dale Penn, Judge.

Kevin T. Lafky argued the cause for appellant. With him on the briefs was Lafky & Lafky.

James S. Coon argued the cause for respondents Service Employees International Union, Local 503, and Oregon Public Employees Union. With him on the brief was Swanson Thomas, Coon & Newton.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Patrick M. Ebbett, Assistant Attorney General, filed the brief for respondent State of Oregon.

No appearance for respondent Oregon University System.

Before Sercombe, Presiding Judge, and Tookey, Judge, and DeHoog, Judge.*

---

* DeHoog, J., *vice* Nakamoto, J. pro tempore.

**TOOKEY, J.**

Plaintiff appeals the judgment dismissing his complaint alleging that defendants State of Oregon and Oregon University System (OUS) violated federal and state statutes by retaliating against plaintiff because he had previously filed overtime wage claims against the state. *Dinicola v. State of Oregon*, 246 Or App 526, 268 P3d 632, *rev den*, 352 Or 377 (2011), *cert den*, ___US ___, 134 S Ct 724 (2012).[1] The main issue on appeal is whether our holding in *Dinicola*, that plaintiff was not employed by the state, precludes plaintiff from relitigating that issue in this current proceeding. The state and third-party defendant Service Employees International Union, Local 503 (Local 503),[2] moved to dismiss all of plaintiff's claims in his first amended complaint, pursuant to ORCP 21 A(8), arguing that plaintiff had no valid claims against the state, because the trial court's decision in *Dinicola*, which we later affirmed on appeal, established conclusively for this proceeding that the state was not plaintiff's employer and, as a matter of law, the antiretaliation statutes only protect an employee from retaliation by one's employer.[3] The trial court agreed, entering judgment against plaintiff on that basis. For the reasons set forth below, we affirm the judgment of the trial court.

## I. FACTS

We recite the facts consistent with the standard of review for an ORCP 21 A(8) dismissal, and "we accept all

---

[1] Plaintiff has sued both the State of Oregon and OUS in this case, and sued the Oregon Department of Revenue (Revenue) in *Dinicola*, the overtime wage case. For ease of reading and in light of the issues plaintiff raises in this case, we refer to all three as "the state" throughout the remainder of this opinion, unless otherwise noted.

[2] Oregon Public Employees Union did not participate in the motion to dismiss and does not participate in this appeal.

[3] At the time that the state moved to dismiss these claims under ORCP 21 A(8), we had not yet issued an opinion for the overtime wage claim addressed in *Dinicola*. The state, in moving to dismiss plaintiff's antiretaliation claims under ORCP 21 A(8), included, for the trial court's consideration, the trial court's letter opinion in *Dinicola*, dated February 21, 2008 (*Dinicola* letter opinion), in which the trial court determined that the state was not plaintiff's employer. Neither party contested below, nor contests on appeal, the trial court's consideration of the *Dinicola* letter opinion. And, on appeal, both parties rely on our recitation of the facts in *Dinicola* to support their arguments. For purposes of the issues raised on appeal, neither party indicates that the facts giving rise to the holding in *Dinicola* are materially different from plaintiff's factual allegations in this current action.

well-pleaded allegations of the complaint as true and give plaintiff[] the benefit of all favorable inferences that may be drawn from the facts alleged." *Stringer v. Car Data Systems, Inc.*, 314 Or 576, 584, 841 P2d 1183 (1992). We disregard any allegations that state conclusions of law.[4] *Tomlinson v. Metropolitan Pediatrics, LLC*, 275 Or App 658, 670-71, 366 P3d 370 (2015), *rev allowed*, 359 Or 847 (2016).

In 1986, the state hired plaintiff as an employee with OUS and, in 1987, plaintiff transferred to the Oregon Department of Revenue (Revenue). Since February 1987, plaintiff has been classified as a "state permanent classified regular status" employee and, under that designation, is considered a "non-exempt" hourly employee. On multiple occasions, plaintiff was compensated, at his discretion, for each overtime hour worked with time and a half cash or compensatory time "in lieu of overtime pay."

In 2004, plaintiff was elected president of Local 503 and, under the collective bargaining agreement (CBA) between the state and Local 503, plaintiff could not be terminated as an employee of the state or have any benefit of state employment reduced as a consequence of his becoming president of Local 503. Nevertheless, as president of Local 503, plaintiff had full-time duties to the union. Thus, state representatives, Local 503's executive director, Leslie Frane, and plaintiff all signed "Agreement #1281," which authorized plaintiff to act as "union president on release time" from the state. Under the agreement, plaintiff retained "all rights, benefits and privileges of his current position and classification, * * * [and remained] in his permanent classification [and was] granted any/all salary adjustments for which he [was] eligible." The agreement further provided

[4] Plaintiff alleges throughout his complaint that he was an employee of the state and that his employment activities were, during the time in question, on behalf of the state. He also alleges that, at times, Local 503 acted as the state's agent. However, the main issue in this case is whether plaintiff's alleged relationship with the state constituted "employment" for purposes of his retaliation claims. Consequently, plaintiff's bare allegations that he was employed by the state, that his activities were on behalf of the state, or that Local 503 acted as the state's agent are mere conclusions of law, "assum[ing] facts that may or may not have been pleaded[,]" *Fearing v. Bucher*, 328 Or 367, 375 n 5, 977 P2d 1163 (1999), and, as such, we disregard them in reviewing the complaint. We focus, instead, on those allegations describing and detailing the relationship between plaintiff and the state.

that plaintiff was to turn into "[the state] each month a timesheet that record[ed] all time worked [for Local 503] and appropriate leave taken." The timesheet, according to the agreement, was to be signed by the union supervisor. The state was to pay plaintiff according to the timesheets turned in and, within 30 days of that payment, Local 503 was to reimburse the state for "payment of salary, benefits, paid leave time, pension and all other employer-related costs," including "[a]ll overtime, compensatory time earned and travel expenses."

Local 503 also agreed to "indemnify and hold [the state] harmless against any and all claims, damages, suits or other forms of liability which may arise out of any action taken or not taken by [the state] for the purpose of complying with the agreement."

Although Agreement #1281 required a union supervisor signature on the timesheets, in practice, Frane, who acted also as union supervisor, did not sign the timesheets before plaintiff turned them into the state. Frane also instructed plaintiff to record on the timesheets no more than 40 hours of time worked per week, regardless of how many hours plaintiff actually worked. Frane assured plaintiff that Local 503 would take care of plaintiffs "comp time" and told plaintiff to report all hours he worked on a separate set of books maintained by Local 503.

In February 2007, plaintiff advised Frane that he intended to submit to the state revised and accurate timesheets—from November 2004 to February 2007—reflecting his actual hours worked, including overtime. Frane refused to sign the timesheets until she had spoken with Local 503's attorney. Plaintiff turned in the timesheets without Frane's signature and, in April 2007, the state denied plaintiff's request for overtime cash or compensatory time, referring to correspondence the state had received from Local 503's attorney. Plaintiff filed suit against the state a month later, claiming entitlement to overtime compensation under state wage laws and under the Federal Labor Standards Act (FLSA), 29 USC §§ 201 to 219. The state, in turn, filed a third-party complaint against Local 503.

Thereafter, some members and leaders of Local 503 began voicing opposition to plaintiff's overtime claims. Through means of the state and OUS email systems, these union members sent emails to state employees who were also members of Local 503, encouraging Local 503 members "to visit * * * non-union websites, such as 'joemustgo.info.'" At least one email that threatened harm to plaintiff by a Local 503 leader was broadly distributed via Local 503, state, and OUS email systems. Other emails sent through the state email systems advocated for plaintiff's recall or resignation as president of Local 503. Petitions were circulated in state buildings claiming that plaintiff's actions "represent[ed] a classic breach" of his duties as Local 503's president.

Pursuant to the CBA, the state allowed its employees to access Local 503's website through state computers and allowed use of a state agency's email messaging system for union messages to union members. Nevertheless, the CBA also prohibited some types of union communication, such as political statements, and prohibited use of the state agency email system to make "false, unlawful, offensive or derogatory statements against any person, organization or group of persons." The CBA also prohibited statements containing "profanity, vulgarity, sexual content, character slurs, threats or threats of violence." The state routinely enforced the CBA's prohibition of state email systems being used for political statements by the union, but the state did nothing to prevent the use of state email systems to disseminate union statements against plaintiff and his overtime wage claims, even when the state's counsel became aware of the union emails being transmitted through the state's email system.

While his FLSA overtime wage claim was pending, plaintiff brought this action against the state, alleging, pursuant to ORS 652.355, ORS 659A.230, ORS 659A.030, ORS 659A.203, and section 15(a)(3) of the FLSA, 29 USC § 215(a)(3) (section 15(a)(3)), that the state had unlawfully retaliated against plaintiff for having filed overtime wage claims against the state. The state, in turn, filed a third-party complaint against Local 503, raising claims of common law and contractual indemnity.

In plaintiff's separate wage-claim action against the state for unpaid overtime wages, meanwhile, the state had filed a motion for summary judgment, arguing that, for purposes of the state and federal statutes pertaining to overtime wages, plaintiff was not an employee of the state but of Local 503 during the time in question, and therefore plaintiff was not entitled to overtime wages from the state. The trial court agreed with the state, and entered judgment against plaintiff on all of his claims. Plaintiff appealed that judgment. *Dinicola*, 246 Or App at 528.

While the appeal in *Dinicola* was still pending, the state and Local 503 filed a joint motion to dismiss plaintiff's complaint in this retaliation action, pursuant to ORCP 21 A(8).[5] The state argued that the trial court's ruling in *Dinicola* precluded plaintiff from litigating the issue of who was his employer, because the issue of who employed plaintiff was identical in the previous wage claim proceeding and in this retaliation proceeding. Furthermore, the state argued, because the antiretaliation statutes under which plaintiff brought his claims only applied to employers, plaintiff's claims against the state failed as a matter of law.

In response, plaintiff argued that, in an ORCP 21 A(8) motion to dismiss, plaintiff was entitled to have all allegations he pleaded taken as true, and that plaintiff had pleaded facts indicating he was an employee of the state. Specifically, plaintiff contended, he had alleged that he was currently an employee of the state, that he was assigned by the state to work for Local 503, and that he retained employment rights, benefits, and privileges with the state. Furthermore, plaintiff argued, the issue of employment for his wage claims in *Dinicola* was not identical to the issue of employment in his antiretaliation claims, because, unlike the wage claims, in which his only recourse was against his employer, the antiretaliation claims provided him with

---

[5] Local 503 joined in the motion to dismiss, and Local 503's counsel provided all written and oral argument on behalf of both the state and Local 503 for the motion to dismiss. On appeal, the state and Local 503, in essence, join their answer to plaintiff's appeal, with Local 503's counsel providing the written and oral arguments for both the state and Local 503. For ease in reading, throughout the rest of this opinion, we identify only the state in referencing the motion to dismiss and in referencing the state's and Local 503's responses to plaintiff's arguments on appeal.

recourse against persons other than his employer. Plaintiff also argued that issue preclusion should not apply when the only decision from the prior proceeding was the trial court's decision, and, in light of the fact that an appellate decision in *Dinicola* was pending, plaintiff requested the trial court to make no ruling until an appellate decision was issued.

The trial court agreed with the state that the trial court's decision in *Dinicola* that plaintiff was not an employee of the state was conclusive on the issue of plaintiff's employment in this proceeding, and dismissed all of plaintiff's claims.[6]

After the trial court entered judgment on plaintiff's retaliation claims, we issued our decision in *Dinicola*, affirming the trial court's conclusion that plaintiff was not an employee of the state for purposes of plaintiff's federal and state overtime wage claims. *Dinicola*, 246 Or App at 528.

In his first three assignments of error on appeal, plaintiff asks us to review the antiretaliation provisions of ORS 652.355, ORS 659A.203, and section 15(a)(3) of the FLSA,[7] under which he brought his first, fourth, and fifth

---

[6] The trial court's decision was based upon two motions to dismiss. The first, filed in October 2010, was a motion to dismiss the original complaint, and the second, filed in June 2011, was a motion to dismiss the first amended complaint. The state's arguments about issue preclusion were essentially the same in both motions. After a hearing on the first motion, the trial court allowed plaintiff to amend his pleadings, in part to address the state's accompanying motion to strike many of plaintiff's allegations in his complaint, and in part to allow more time for this court to issue an opinion in *Dinicola*. After plaintiff filed his first amended complaint, the state again filed a motion to dismiss. Although we had not yet issued an opinion in *Dinicola*, the trial court concluded that it agreed with the state's arguments pertaining to the application of issue preclusion, and that it must adhere to the trial court's decision in *Dinicola*. The trial court stated:

"[E]arlier I had refused to honor [the trial court's ruling in *Dinicola*] at that time and gave plaintiff an opportunity to replead and to see if there could be new averments that would convince me that it was appropriate to move forward. But as I've reviewed the matters again, I am convinced that [the trial court's ruling in *Dinicola*] is a final ruling that this Court must respect. I'd also thought that perhaps some matter of months may give us some guidance from the Court of Appeals, but maybe that was too optimistic. I do believe that it is a legal issue rather than a factual issue, *** I think the law is very clear that the ruling about who is the employer is significant."

[7] Plaintiff does not challenge the dismissal of his second and third claims that he made under ORS 659A.030 or ORS 659A.230.

claims of retaliation, respectively.[8] He contends that the trial court in this proceeding erred in determining that the trial court's earlier decision in *Dinicola* that plaintiff was not an employee of the state conclusively established that plaintiff was not an employee of the state under the antiretaliation statutes as well. Plaintiff further argues that, even if he was not an employee of the state, the antiretaliation statutes allow him to sue someone other than his employer for retaliation.

The state does not respond directly to plaintiff's contention that the trial court erred in dismissing his claims based on issue preclusion. Instead, the state argues that, under the definition of employment in each retaliation statute, the state was not plaintiff's employer, and the statutes do not allow a nonemployer to be sued for retaliation.

In order to address these arguments, we review each retaliation statute separately and ask the following questions: (1) Does the antiretaliation statute at issue in this case define employment similarly to the definition of employment under the FLSA at issue in *Dinicola*, such that the trial court correctly determined that our decision in *Dinicola* conclusively establishes for the retaliation claim that plaintiff is not an employee of the state? (2) If the issue is not precluded, did plaintiff nevertheless fail to allege facts sufficient to indicate that, under the antiretaliation statute's definition of employment, plaintiff is an employee of the state?[9] (3) If plaintiff is not an employee of the state, does the statute allow a nonemployer to be sued for retaliation?

## II. ANALYSIS

We begin by addressing the law of issue preclusion, as it applies to the issues in this case. "If a claim is litigated to final judgment, the decision on a particular issue or

---

[8] We reject plaintiff's fourth and fifth assignments of error without discussion.

[9] Although the state never specifically argued to the trial court that plaintiff failed to allege facts sufficient to indicate that plaintiff was employed by the state, as that phrase is interpreted in each antiretaliation statute, we may address this issue as an alternative ground for affirming, because the issue involves a pure question of law. *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659, 20 P3d 180 (2001) (appellate court will consider unraised arguments for affirmance where the issue is "purely one of law").

determinative fact is conclusive in a later or different action between the same parties if the determination was essential to the judgment." *North Clackamas School Dist. v. White*, 305 Or 48, 53, 750 P2d 485, *modified on recons*, 305 Or 468, 752 P2d 1210 (1988). Issue preclusion applies to an issue of either fact or law. *Drews v. EBI Companies*, 310 Or 134, 140, 795 P2d 531 (1990). A prior decision of an issue is conclusive in future proceedings only if certain criteria are met:

"1.  The issue in the two proceedings is identical.

"2.  The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding.

"3.  The party sought to be precluded has had a full and fair opportunity to be heard on that issue.

"4.  The party sought to be precluded was a party or was in privity with a party to the prior proceeding.

"5.  The prior proceeding was the type of proceeding to which this court will give preclusive effect."

*Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 104, 862 P2d 1293 (1993) (citations omitted). The only criterion that plaintiff contests is whether the issue in the two proceedings is identical. Plaintiff argues that, because "the issues [are] not identical, it follows that plaintiff did not receive a full and fair opportunity to litigate the matter."

The issue in *Dinicola* was whether plaintiff was entitled to overtime wages from the state, pursuant to the FLSA.[10] Section 7 of the FLSA, 29 USC § 207(a), provides that an "employer shall [not] employ any of his employees *** for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." The terms "employee" and "employer" have specific meanings under the FLSA, and we looked at each definition in

---

[10] In *Dinicola*, we interpreted the meaning of "employment" under both the FLSA and the analogous state law, and concluded that, for purposes of the issues raised in *Dinicola*, the test for "employment" under the state overtime wage law followed the test for "employment" under the FLSA. 246 Or App at 544-45. Accordingly, we rely on our interpretation of employment under the FLSA in *Dinicola* in addressing the question of issue preclusion in this case.

relationship to plaintiff's employment status. *Dinicola*, 246 Or App at 533. In *Dinicola*, we first considered the definition of "employee" in section 3(e) of the FLSA, 29 USC § 203(e), which defines "employee" as "any individual employed by an employer." We then considered section 3(d), 29 USC § 203(d), in which "employer" is defined to include "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency[.]" Finally, we looked at the definition of "employ," under section 3(g), 29 USC § 203(g), which means "to suffer or permit to work." We concluded that the definition "suffer or permit to work" is "broader than the traditional common-law test of employment and that it focuses on whether the person is an employee as a matter of economic reality, which in turn rests largely on the kind of work the person performs and economics of who controls and benefits from the person's work." *Dinicola*, 246 Or App at 538. We, therefore, held:

> "[A]s a matter of economic reality, plaintiff was an employee of Local 503 * * * during his terms as its president. During that time, the union was responsible for plaintiff's compensation, and plaintiff served the union's interests as its presiding officer and chief spokesperson and representative. Even under the broad definition of the term 'employ' under the FLSA, plaintiff was not an employee of [the state]."

*Id.*

Our conclusion regarding plaintiff's employment status depended on the meaning of certain terms under the FLSA, as evidenced by the FLSA's statutory definitions and case law explaining the same. Plaintiff's claims in the current proceeding, although based on the same pertinent facts as those in the overtime wage claim proceeding, depend on the meaning of certain terms under the state and federal antiretaliation statutes. For purposes of issue preclusion, where the issue in both proceedings requires the application of a particular legal standard to the same set of facts, the issue is identical when the legal standard in both proceedings is the same or similar. *Nelson*, 318 Or at 107-08 (concluding that the issues were not identical in the two cases, because the first case involved the analysis of a statute and administrative rule with a different standard than the analysis of a separate workplace rule at issue in

the second case). In this case, where the pertinent facts in both proceedings are the same and the issue to be precluded pertains to the meaning of the same or similar terms in different statutes, the issues are identical if the terms in question are defined the same or are interpreted similarly in the statutes. Stated differently, our conclusion in *Dinicola* that plaintiff was not an employee of the state is conclusive in this proceeding if the meaning of "employment" in each of the retaliation statutes is defined the same or interpreted similarly to the meaning of "employment" under the FLSA. With that in mind, we consider the meaning of employment under each antiretaliation statute, and whether the meaning of employment is defined or interpreted similarly to the meaning of employment under the FLSA.

A. *The FLSA's Antiretaliation Statute, Section 15(a)(3)*

We first determine whether the meaning of employment under section 15(a)(3) is identical to the meaning of employment in the FLSA provisions at issue in *Dinicola*, such that the trial court correctly determined that our decision in *Dinicola* conclusively establishes for the section 15(a)(3) claim that plaintiff was not an employee of the state. Section 15(a)(3), provides, in part:

"[I]t shall be unlawful for any person * * * to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter[.]"

Contrary to plaintiff's assertions, the meaning of "employee" under section 15(a)(3) is identical to the meaning of "employee" in plaintiff's section 7 overtime wage claim at issue in *Dinicola*. The FLSA's definitions for "employee," "employer," and "employ," 29 USC § 203, apply to an overtime wage claim in section 7—at issue in *Dinicola*—and to a retaliation claim under section 15(a)(3). Thus, for purposes of plaintiff's FLSA retaliation claim, our prior decision in *Dinicola* conclusively establishes that plaintiff was not employed by the state during the pertinent time period.

Plaintiff argues that, even if he was not employed by the state, the trial court erred in dismissing his retaliation claim, because section 15(a)(3) allows him to file a

retaliation claim against "any person," and not just the person by whom he was employed during the pertinent time period. Thus, plaintiff argues, he could sue the state, even if the state was not his employer. Plaintiff's argument, however, essentially requires us to consider two issues: whom he can sue for retaliation, and on what basis he can sue for retaliation. According to plaintiff, he can sue a nonemployer for retaliation, and the basis for that claim of retaliation can pertain to a wage claim made against someone other than plaintiff's employer at the pertinent time period.

Assuming, without deciding, that the state is a "person" whom plaintiff can sue under section 15(a)(3), we conclude that the basis of plaintiff's claim—that he suffered retaliation for having filed a wage complaint against someone other than his employer—is not a basis for recovery under section 15(a)(3). We make that conclusion based on the statute's text and context, including a consideration of the purpose of the FLSA as a whole.[11]

The FLSA "is carefully drawn and every term is used as a term of art." *Bowe v. Judson C. Burns, Inc.*, 137 F2d 37, 38 (3d Cir 1943).[12] In *Bowe*, the United States Court of Appeals for the Third Circuit determined that, by using the term "any person" in section 15(a)(3), Congress plainly expressed an intent not to limit the persons who could be sued under section 15(a)(3) solely to an individual's employer. The court reasoned:

> "Legislative intent must be drawn from the act as a whole. Those portions of the Act (Sections 6 and 7, 29 U.S.C.A. § 206 and 207) relating to wages and to hours do apply only to employers. The prohibitions expressed in Section 15, 29 U.S.C.A. § 215, however, are applicable 'to any person.' * * * Section 16(a), 29 U.S.C.A. 216(a), provides that 'any person'

[11] *See Nay v. Dept. of Human Services*, 267 Or App 240, 246 n 3, 340 P3d 720 (2014), *rev allowed*, 357 Or 164 (2015) (similar to our method of interpreting a state statute, in interpreting a federal statute, we examine the federal statute's text, context, and legislative history); *see also PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993) (setting forth our methodology for interpreting a state statute); *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (further explaining and clarifying our methodology).

[12] Lower federal court case law interpreting section 15(a)(3) is also helpful in determining the intent of Congress in enacting this provision. *State v. Capell*, 156 Or App 582, 586, 966 P2d 232 (1998), *rev den*, 328 Or 418 (1999).

who wilfully violates Section 15 may upon conviction be subject to fine and imprisonment. Subsection (b) of Section 16 provides that an 'employer' who violates the wage and hour sections of the Act (Sections 6, 7) shall be liable to the employees affected for unpaid wages and for damages."

*Id.* at 38-39.

As the above reasoning indicates, there is a distinction in the FLSA between the issue of unpaid wages and the issue of retaliation, and only employers can be liable for unpaid wages, whereas "any person[s]" can be liable for retaliation. However, "any person" is not the only term of art used in section 15(a)(3). Section 15(a)(3) prohibits "any person" from retaliating against "any *employee* because such *employee* has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." (Emphasis added.) Just as Congress deliberately used the term "any person" in this provision, it also deliberately used the term "employee," and, as we have already explained, "employee" is defined in the FLSA as "any individual employed by an employer." 29 USC § 203(e).

The Fourth Circuit, in *Dellinger v. Sci. Applications Int'l Corp.*, 649 F3d 226, 229 (4th Cir 2011), *cert den*, 565 US 1197, 132 S Ct 1542 (2012), explained:

"An 'employee' does not, in the Act, exist in a vacuum; rather it is defined in relationship to an employer. * * * [B]y using the term 'employee' in the anti-retaliation provision, Congress was referring to the employer-employee relationship, the regulation of which underlies the Act as a whole[.]"

Thus, read in context, section 15(a)(3) prohibits retaliation against an individual employed by an employer, because such individual employed by such employer filed an FLSA complaint. Because "complaints," under the FLSA, pertain to the rights of employees in relation to their employers, and only employers can be liable for violations of such provisions,[13] it follows that, in order for an individual to have a section 15(a)(3) retaliation claim, the individual's underlying

---

[13] *See, e.g.*, 29 USC § 206 (provisions pertaining to minimum wage); 29 USC § 207 (provisions pertaining to maximum hours); *see also Bowe*, 137 F2d at 38 ("Those portions of the Act (Sections 6 and 7, 29 U.S.C.A. § 206 and 207) relating to wages and to hours do apply only to employers.").

FLSA complaint must have been against his or her employer at the time pertinent to the FLSA complaint. Although we have found no federal regulations or case law specifically addressing this issue regarding the underlying FLSA complaint, and the parties have cited none, we find lower federal court case law interpreting a related issue helpful.

Federal courts have considered whether, based on the statute's use of the words "any person," there are any restrictions on who may be sued under section 15(a)(3). Those courts that have considered the issue have limited the meaning of "any person" to persons with whom a connection to the employer-employee relationship giving rise to the wage claim exists. For example, in *Dunlop v. Carriage Carpet Co.*, 548 F2d 139, 147 (6th Cir 1977), the court allowed a former employee to sue his former employer for retaliation that occurred after his employment ended, where the alleged retaliation arose from the employee having filed a wage claim against his employer when he was employed with the employer. *See also Bonham v. Copper Cellar Corp.*, 476 F Supp 98, 103 (ED Tenn 1979) (noting possibility of such a claim).

Federal courts have allowed claims against non-employers who retaliated in concert or in connection with an employer after the employee made a wage claim against that employer. Thus, in *Bowe*, the court concluded that the plaintiffs could sue their labor union under section 15(a)(3), where the plaintiffs had alleged that their employer and their labor union conspired to force the plaintiffs to abandon their wage claims against the employer. 137 F2d at 38-39. In *Meek v. United States*, 136 F2d 679 (6th Cir 1943), the court concluded that, although the defendant was not the employees' employer, the defendant could be convicted of unlawful discharge under section 15(a)(3), because the defendant was the previous owner of the business and had sold it to his son-in-law, continued to do much of the hiring and firing at the business, and threatened to fire the business' employees if they filed wage claims against their employer. And in *Donovan v. Schoolhouse Four, Inc.*, 573 F Supp 185, 190 (WD Va 1983), the court allowed a claim against a consultant who had been "personally involved in the firings" of the

plaintiffs after the plaintiffs had filed wage claims against the employer.

In contrast, the court in *Dellinger* affirmed the dismissal of a claim by a prospective employee allegedly denied a job because of a wage claim he filed against his previous employer. 649 F3d at 230; *see also Harper v. San Luis Valley Regional Med. Center*, 848 F Supp 911, 914 (D Colo 1994) (holding similarly). In these latter cases, there was no connection between the nonemployer being sued for retaliation and the employer-employee relationship giving rise to the wage claim.

If section 15(a)(3) only allows retaliation claims against nonemployers with whom there is a connection to the employer-employee relationship giving rise to the wage claim, it follows that the wage claim itself must also arise from that employer-employee relationship.

In this analysis, we are also guided by the United States Supreme Court's explanations of the purpose of the FLSA and its antiretaliation protections:

> "For weighty practical and other reasons, Congress did not seek to secure compliance with prescribed standards through continuing detailed federal supervision or inspection of payrolls. Rather it chose to rely on information and complaints received from employees seeking to vindicate rights claimed to have been denied. Plainly, effective enforcement could thus only be expected if employees felt free to approach officials with their grievances. [To this end] the prohibition of [section 15(a)(3)] against discharges and other discriminatory practices was designed to serve. For it needs no argument to show that fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions."

*Mitchell v. Robert DeMario Jewelry, Inc.*, 361 US 288, 292, 80 S Ct 332, 4 L Ed 2d 323 (1960); *see also Williamson v. General Dynamics Corp.*, 208 F3d 1144, 1151 (9th Cir), *cert den*, 531 US 929 (2000) (the purposes of the antiretaliation provision are: (1) to provide an incentive for employees to report wage and hour violations by their employers; (2) to prevent fear of economic retaliation by an employer against an employee who chose to voice such a grievance and to

ensure that employees are not compelled to risk their jobs in order to assert their wage and hour rights under the Act); *Onken v. W.L. May Co.*, 300 F Supp 2d 1066, 1068 (D Or 2004) ("[T]he provision's overarching purpose * * * [is to] encourag[e] employees to reveal employers' statutory violations."). The Supreme Court further explained the purposes of the FLSA in *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 US 1, 11-12, 131 S Ct 1325, 179 L Ed 2d 379 (2011):

> "The Act seeks to prohibit 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.' 29 U.S.C. § 202(a). It does so in part by setting forth substantive wage, hour, and overtime standards. It relies for enforcement of these standards, not upon 'continuing detailed federal supervision or inspection of payrolls,' but upon 'information and complaints received from employees seeking to vindicate rights claimed to have been denied.' *Mitchell v. Robert DeMario Jewelry, Inc.*, [361 US 288, 292, 80 S Ct 332, 4 L Ed 2d 323 (1960)]. And its antiretaliation provision makes this enforcement scheme effective by preventing 'fear of economic retaliation' from inducing workers 'quietly to accept substandard conditions.' *Ibid.*"

As the Supreme Court has indicated, the purpose of the FLSA is to address a worker's right to wage, hour, and overtime standards, and to encourage the employee's reporting of hour and wage claims against employers by reducing an employee's fear of retaliation for reporting a wage claim. Nevertheless, although protection of the employee is the main purpose of the FLSA, the Supreme Court agreed with the defendant in *Kasten* that the FLSA "also seeks to establish an enforcement system that is fair to employers." 563 US at 13. That system, the Supreme Court said, should include giving an employer "fair notice that an employee is making a complaint that could subject the employer to a later claim of retaliation," and notice of a complaint that the employer "does, or should, reasonably understand [to be] part of its business concerns." *Id.* at 14.

Our review of the federal case law indicates, therefore, that the purpose of the FLSA is to protect employees, but in a manner that provides fairness to employers. Although an individual may benefit from the unfettered ability to sue

any person for retaliation, regardless of whether the individual filed the underlying wage claim against his or her employer, plaintiff's interpretation of the FLSA lacks fairness to the persons subject to such claims. There is no fairness in an interpretation of the FLSA that would require "any person" to reasonably understand *any* wage complaint made against her or him—even those wage claims for which no employment relationship exists between the person and the complaining individual—as part of the "person's" business concerns, or as grounds for subjecting that "person" to a retaliation claim. Thus, we conclude, based on the text, context, and purpose of the FLSA, that, although section 15(a)(3) allows an individual to sue someone other than his or her employer for retaliation, the alleged retaliation must pertain to an FLSA complaint that the individual brought against the employer to whom the individual was employed at the time of the FLSA complaint.

In this case, we have already determined, pursuant to our previous decision in *Dinicola*, that plaintiff was not the state's employee at the time that plaintiff filed his underlying wage complaint; plaintiff was Local 503's employee. Thus, plaintiff alleges retaliation for filing a wage complaint against a person by whom plaintiff was not employed at the time of the FLSA complaint. Consequently, plaintiff has failed to allege that the retaliation pertained to an FLSA claim against his employer, and the trial court did not err in dismissing plaintiff's claim under section 15(a)(3) of the FLSA.

B. *Plaintiff's Claim Under ORS 652.355*

ORS 652.355[14] provides, in pertinent part:

"(1)  An employer may not discharge or in any other manner discriminate against an employee because:

"(a)  The employee has made a wage claim or discussed, inquired about or consulted an attorney or agency about a wage claim."

---

[14] We refer in this opinion to the version of ORS 652.355 now in effect. The 2007 version of ORS 652.355, in effect at the time of the events giving rise to plaintiff's claims, was substantively identical.

We begin our analysis by determining whether the terms "employer" and "employee," as used in ORS 652.355, have the same or similar meaning to those same terms found in the FLSA, such that our holding in *Dinicola* conclusively establishes that, for plaintiff's claim under ORS 652.355, plaintiff was not employed by the state. As with the terms "employer" and "employee" under the FLSA, the terms "employer" and "employee" have specific meanings under ORS 652.355. The definitions for those terms are found in ORS 652.310:

"(1) 'Employer' means any person who in this state, directly or through an agent, engages personal services of one or more employees and includes any successor to the business of any employer, or any lessee or purchaser of any employer's business property for the continuance of the same business, so far as such employer has not paid employees in full. 'Employer' includes the State of Oregon or any political subdivision thereof or any county, city, district, authority, public corporation or entity and any of their instrumentalities organized and existing under law or charter ***.

"* * * * *

"(2) 'Employee' means any individual who otherwise than as copartner of the employer or as an independent contractor renders personal services wholly or partly in this state to an employer who pays or agrees to pay such individual at a fixed rate, based on the time spent in the performance of such services or on the number of operations accomplished, or quantity produced or handled."

The terms "employer" and "employee" in ORS 652.310 are defined differently from those in the FLSA and have a distinctly different meaning from those same terms in the FLSA. Consequently, the meaning of employment presented in this ORS 652.355 claim of retaliation is different from the meaning of "employment" under the FLSA, which was addressed in *Dinicola*, and *Dinicola*'s holding is not preclusive of plaintiff's claim under ORS 652.355.

We consider next whether plaintiff has alleged facts sufficient to indicate that, under the retaliation statute's definition of employment, plaintiff was an employee of the state. We conclude that he has not.

In interpreting the meaning of a statute, we examine the text of the statute in its context, along with relevant legislative history, and, if necessary, canons of construction. *State v. Cloutier*, 351 Or 68, 75, 261 P3d 1234 (2011). The definition of employee under ORS 652.310 provides that an employee "renders personal services wholly or partly in this state to an employer who pays or agrees to pay such individual * * * [for] such services," and the definition of employer provides that an employer is one who "engages personal services" of an employee. Read together, it is evident that an employee renders "personal services" to the employer for which services the employee is paid by the employer. Plaintiff's allegations do not indicate that plaintiff was rendering personal services to the state. Plaintiff's allegations, at best, indicate that the state was paying plaintiff for rendering personal services to Local 503, and that Local 503, in turn, reimbursed the state for its payments to plaintiff. We conclude that plaintiff was not an employee of the state under the definition of "employee" in ORS 652.310.

Having concluded that plaintiff was not an employee, we next turn to whether, as plaintiff argues, he can nevertheless pursue his claim against the state for retaliation, even though the state is not his employer. ORS 652.355 provides that "an employer" may not discriminate against "an employee." The parties note OAR 839-010-0100(4)(a), which has interpreted ORS 652.355 to prohibit "any employer with one or more employees in Oregon from discriminating or retaliating against a current, former, *or any other employer's employee* because * * * [t]he employee has made a wage claim or has discussed with anyone, inquired of anyone, or consulted an attorney or agency about a wage claim." (Emphasis added.) Plaintiff argues that the administrative rule applies to the state, because the state is an employer and the state discriminated against another employer's employee.

Plaintiff's argument, however, fails to consider the provisions of the statute and the administrative rule in their entirety. The statute and the rule prohibit discrimination occurring as a result of a wage claim. "Wage claim" is also defined by ORS 652.320:

"(7) 'Wage claim' means an employee's claim against an employer *for compensation for the employee's own personal*

*services*, and includes any wages, compensation, damages
or civil penalties provided by law to employees in connec-
tion with a claim for unpaid wages."

(Emphasis added.)

Under that definition, as under section 15(a)(3) of
the FLSA, the wage claim must be made by the employee
against the employee's employer. It must also pertain to
personal services the employee provided to the employee's
employer and the expected compensation for those personal
services. Because the state was not plaintiff's employer,
plaintiff has not alleged facts indicating that he made a
wage claim against his "employer" for personal services pro-
vided to his "employer." Plaintiff, therefore, has not alleged
facts indicating that the state discriminated against him
because he filed or otherwise discussed a "wage claim," as
that term is defined for purposes of ORS 652.355 and OAR
839-010-0100. Consequently, the trial court did not err in
dismissing plaintiff's claim under ORS 652.355.

C. *Plaintiff's Claim Under ORS 659A.203*

ORS 659A.203 is part of the whistleblowing laws
for public employees, first enacted in 1989.[15] ORS 659A.203
provides, in pertinent part, that "it is an unlawful employ-
ment practice for any public employer[16] to * * * prohibit any
employee from disclosing * * * any information that the
employee reasonably believes is evidence of * * * [a] viola-
tion of any federal or state law, rule or regulation by the
state, agency or political subdivision[,]" or to "[d]iscourage,
restrain, dissuade, coerce, prevent or otherwise interfere
with disclosure or discussions described in this section."
Plaintiff argues that the state "discouraged, restrained, dis-
suaded, prevented or otherwise interfered with" plaintiff's
disclosure of violations of federal or state law when the state

---

[15] *Former* ORS 659.505 to 659.545 (1989), *renumbered as* ORS 659A.200 to
659A.224 (2001).

[16] ORS 659A.200(3) also defines "public employer" as:

"(a) The state or any agency of or political subdivision in the state; and

"(b) Any person authorized to act on behalf of the state, or any agency of
or political subdivision in the state, with respect to control, management or
supervision of any employee."

The parties do not appear to contest that the state was a "public employer."

failed to police its email systems from offensive, threatening, and libelous statements about plaintiff's overtime wage claims.

We begin our analysis by first determining whether the terms "employee" or "employ" have the same or similar meaning under ORS 659A.203 to the meaning of those same terms under the FLSA, such that our holding in *Dinicola* conclusively establishes that, for plaintiff's claim under ORS 659A.203, plaintiff was not employed by the state. At the relevant time, ORS 659A.200(2),[17] provided:

"(2)   'Employee' means a person employed by or under contract with:

"(a)   The state or any agency of or political subdivision in the state;

"(b)   Any person authorized to act on behalf of the state, or agency of the state or subdivision in the state, with respect to control, management or supervision of any employee;

"(c)   Employees of the public corporation created under ORS 656.751;

"(d)   Employees of a contractor who performs services for the state, agency or subdivision, other than employees of a contractor under contract to construct a public improvement; and

"(e)   Any person authorized by contract to act on behalf of the state, agency or subdivision."

On its face, the definition of "employee" under ORS 659A.200 is distinctly different from the definition of "employee" under the FLSA. "Employee," as defined in ORS 659A.200(2), means not only persons "employed by" the state, but persons employed by those authorized to act on behalf of the state or employed by contractors providing services to the state. An "employee" also means one "under contract" with the state or "under contract" with persons

---

[17] All references in this opinion to ORS 659A.200(2) are to ORS 659A.200(2) (2007), the statute in effect at the time of the events giving rise to plaintiff's claims.

authorized to act on behalf of the state. Consequently, our decision in *Dinicola* that plaintiff was not an employee of the state under the FLSA does not conclusively establish that plaintiff was not an employee of the state for purposes of plaintiff's ORS 659A.203 claim.

We next consider whether the trial court was nevertheless correct in dismissing the claim, because plaintiff failed to allege facts sufficient to indicate that plaintiff was an "employee," as that term is defined in ORS 659A.200(2), at the time pertinent to his claim under ORS 659A.203. Plaintiff argues that he was an "employee" under subsection (2)(a), because the allegations indicate he was "employed by or under contract with the state." To determine whether plaintiff's allegations fall within the meaning of subsection (2)(a), we again apply our statutory interpretation methodology, examining the text of the statute in its context, along with relevant legislative history and, if necessary, canons of construction. *Cloutier*, 351 Or at 75.

As noted above, "employee," as defined in ORS 659A.200(2), means a person "employed by" the state or "under contract" with the state. The term "employed," however, is not defined in ORS 659A.200, nor anywhere else in ORS chapter 659A. Nor is the term "under contract" defined.

ORS chapter 659A does, however, define the term "employer" in ORS 659A.001(4)(a) as "any person who in this state, directly or through an agent, engages or uses the personal service of one or more employees, reserving the right to control the means by which such service is or will be performed."[18] Thus, to interpret ORS 659A.200(2) consistently with the rest of ORS chapter 659A, and to interpret the phrase "employed by" consistently with the term "employer," the term "employed by" would mean having one's personal services engaged or used by an employer, with the employer reserving the right to control the means by which such service is or will be performed. *See Lane County v. LCDC*, 325 Or 569, 578, 942 P2d 278 (1997) ("We do not look at one

---

[18] The definitions in ORS 659A.001 apply to all of ORS chapter 659A. ORS 659A.001 (defining terms "as used in this chapter").

subsection of a statute in a vacuum; rather, we construe each part together with the other parts in an attempt to produce a harmonious whole.").

Based on plaintiff's allegations, the state was not engaging or using the personal service of plaintiff, nor was the state controlling the means by which plaintiff performed services. Instead, the allegations indicate that, during the time pertinent to plaintiff's claim for overtime wages and the state's alleged retaliation, Local 503 engaged or used the personal service of plaintiff and controlled the means by which plaintiff performed services. Consequently, plaintiff was not "employed by" the state, for purposes of ORS 659A.200(2)(a).

Plaintiff argues that, even if he was not "employed by the state," under the definition of "employee" in ORS 659A.200, he could still sue the state for retaliation if he was "under contract" with the state at the pertinent time period. Plaintiff argues, essentially, that, by signing Agreement #1281 with the state and Local 503, plaintiff was actually "under contract" with the state and Local 503. We disagree.

When the legislature adopted the public whistle-blower provisions, chapter 279 of the Oregon Revised Statutes governed the contracts that state agencies entered into with other entities. ORS 279.011(4) (1987) defined "public contract" as "any purchase * * * by a public agency of personal property, public improvements or services other than agreements which are for personal service." ORS 279.051 (1987) set forth the requirements for a public agency's "contracts for personal services." Thus, at the time the legislature adopted the term "under contract" in its definition of "employee" in ORS 659A.200(2), the types of state agency contracts contemplated were those for personal property, public improvements, and services, including personal services. Under Agreement #1281, plaintiff did not provide the state with any of the above items.

Furthermore, read in context, "employed by or under contract with" are not entirely independent terms but, together, pertain to the difference at common law between

an employee and an independent contractor.[19] *Restatement (Second) of Agency* section 220(1) comment c (1958) explains:

"The important distinction [between the employee and the independent contractor] is between service in which the actor's physical activities and his time are surrendered to the control of the master, and service under an agreement to accomplish results or to use care and skill in accomplishing results. Those rendering service but retaining control over the manner of doing it are not servants."

*See also Landberg v. State Industrial Acc. Com.*, 107 Or 498, 503, 215 P 594 (1923) (an independent contractor is one who, "generally exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer except as to the result of the work").[20]

In other words, an employee and an independent contractor both provide services to another person, but the employee, unlike the independent contractor, is subject to the employer's right to control the method by which the services are provided. We conclude that, in using the term "under contract," the legislature intended that phrase to reflect the common-law understanding of independent contractor and that the legislature intended the phrase, "employed by or under contract with," the legislature intended the term to encompass the combined common-law meanings of those two terms. In other words, "employed by * * * the state" means providing services to the state and being subject to the state's control over the method by which the services are provided, and "under contract with the state" means providing services to the state, but not being subject to the state's control over the method by which the services are provided. In this case, the alleged contract on which plaintiff relies

---

[19] *See State v. Ofodrinwa*, 353 Or 507, 512, 300 P3d 154 (2013) ("The context for interpreting a statute's text includes preexisting common law.").

[20] The common-law test for an independent contractor is codified in ORS 670.600(2) ("'Independent contractor' means a person who provides services for remuneration and who, in the provision of the services * * * [i]s free from direction and control over the means and manner of providing the services, subject only to the right of the person for whom the services are provided to specify the desired results.").

does not indicate that plaintiff provided services[21] to the state during the pertinent time frame. Nor are there other allegations that indicate that, at the time that plaintiff filed his wage complaint and the state allegedly retaliated against plaintiff, plaintiff was providing services to the state.

We therefore conclude that the trial court did not err in dismissing plaintiff's claim under ORS 659A.203.

Affirmed.

---

[21] Contrary to plaintiff's assertion, turning in a timesheet to the state does not constitute "services," as that term is meant in relation to the common-law definitions of employee or independent contractor.